CASSELS *et al. v.* FINN.

The failure to perform an oral promise made by the sole heir at law of one desiring to dispose of her estate by will to third persons, that he will dispose of her estate as she desires, can not make the heir at law, in case of an intestacy, a trustee ex maleficio as to the property inherited by him, in the absence of actual fraud.

Argued December 16, 1904.—Decided January 30, 1905.

Equitable petition. Before Judge Reagan. Thomas superior court. June 20, 1904.

In 1875 John L. Finn married Miss Susie Smith, and they lived together as man and wife until she died on July 25, 1894. At the time of her death she was seized and possessed of a separate estate, which in part consisted of certain lands acquired by inheritance from her father. She had for some time previously been in bad health, and for about six weeks prior to her death had been confined to her bed, but she was at the time of sound and disposing mind and memory. On the night of June 17, 1894, Mrs. Finn repeatedly, in the presence of Mrs. Cora S. Cassels, her sister, and another, expressed a desire to make a will, providing for the payment of certain small legacies, disposing of one half of the residue of her property to Mrs. Cassels and her children, and providing that her husband should have a life-estate in the other half, charged with the expense of educating one of the sons of Mrs. Cassels, with remainder over to this son. Mrs. Cassels, in order to quiet her sister and enable her to rest during the night, prevailed upon Mrs. Finn to postpone the making of a will until the following morning, when she could send for some one to come and see her and prepare the necessary papers. The next morning, Mrs. Finn sent for her husband and told him what disposition she wished to make of her property; and upon his assurance that he would carry out her wishes in the matter, she abandoned her intention of making a will. During the period of her illness he frequently requested Mrs. Cassels not to encourage his wife to make a will, saying he would treat Mrs. Cassels right touching the distribution of his wife's estate. Upon his wife's death, he as her sole heir at law took possession of her estate. In 1896, Finn intermarried with Mrs. Lillian E. Winn, and in January, 1898, died leaving her as his sole heir at law. He died without carry-

3

ing out, save in minor particulars, the wishes of his former wife respecting the division to be made of her separate estate.  After the death of Finn, his second wife, Mrs. Lillian E. Finn, took possession of and assumed control over all of the property of which he died seized, including much of the property inherited from his former wife.  The present action was brought against Mrs. Lillian E. Finn by Mrs. Cassels and her children, to compel an accounting and to recover of the defendant all of the property in her possession which had formed a part of the separate estate of Mrs. Susie S. Finn at the time of her death.  The theory on which the petition was framed was, that inasmuch as Finn's former wife had been induced by his fraudulent conduct to abandon her intention of executing a will, and as he had thus been enabled to acquire her estate by inheritance, the property belonging thereto became impressed with an implied or constructive trust in favor of the plaintiffs, and that Finn held the same merely in the capacity of a trustee for them.  Upon a demurrer to the petition, interposed by the defendant, the court below held that no cause of action was set forth in the petition, and the action was accordingly dismissed.  To this ruling the plaintiffs except.

*Denmark, Ashley & Smith* and *S. A. Roddenbery*, for plaintiffs.
*Hammond & Hammond* and *Fondren Mitchell*, for defendant.

EVANS, J.  (After stating the facts.)  Unless the allegations of the petition respecting the conduct of the husband of the defendant relating to the intestacy of Mrs. Susie Finn will imply a trust which can be established by parol proof, the demurrer was rightfully sustained.  Express trusts must be created or declared in writing.  Civil Code, § 3153.  Hence, the parol promise alleged to have been made by John Finn to his first wife can not be upheld as an express trust.  But if from the nature of the transaction it be manifest that it was the intention of Mrs. Susie Finn to make a will devising her property to plaintiffs, as alleged in the petition, and she was prevented from so doing by the fraud of her husband, whereby upon her decease he became vested with the absolute title to all her property as heir at law, equity will imply a trust.  Civil Code, § 3159.  "There is no law which requires a fraudulent undertaking to be manifested by writing.  Those who use promises, which they make deceitfully, for the purpose of accomplishing fraudulent designs, are generally careful not to fur-

nish written evidence of their turpitude.    Such promises, what-
ever may be their terms, do not, unless reduced to writing, raise
express trusts ; but the law, acting upon them according to their
nature, makes them a basis upon which to build up in favor of the
defrauded party an implied or constructive trust." *Brown* v.
*Doane*, 86 *Ga.* 38.    The learned judge who delivered the opinion
in that case quoted approvingly from 2 Pom. Eq. Jur. § 1656 :
" In order that the doctrine of trusts *ex maleficio* with respect to
land may be enforced under any circumstances, there must be
something more than a mere verbal promise, however unequivocal,
otherwise the statute of frauds would be virtually abrogated ; there
must be an element of positive fraud accompanying the promise,
and by means of which the acquisition of the legal title is wrong-
fully consummated."    There is a great difference between the
breach of a promise made with no intention of performing it and
the breach of a promise not fraudulent of itself.    In discussing
this distinction, Lumpkin, J., in *Robson* v. *Harwell*, 6 *Ga.* 615,
said :  " The rule I am contending for is not only the rule of the
books, but it is the dictate of sound reason.    Let the doctrine be
once established that a failure to comply with a parol promise
made cotemporaneous with a deed is, ipso facto, a fraud and can
be proved, and the promise decreed to be performed in equity on
the ground of fraud, and you do what the Master of Rolls, in Port-
more *vs.* Morris, refused to do — *demolish one of the foremost rules
of law.*"

Do the allegations of the petition show any fraudulent conduct
on the part of John Finn ?    It is charged that Mrs. Susie Finn
sent for her husband and " repeated to him several times what
disposition she wanted made of her property," it being the same
described in the petition.    " Thereupon the said John L. Finn said
to his wife, ' I promise and swear to do everything just as you
wish and as you have stated ; ' his wife then replied to him, ' John
Finn, your word is as good as a will.'    The said Mrs. Susie S.
Finn then, relying on his promise and believing that he would
in good faith carry out her wishes, decided not to have a will pre-
pared."    This conversation is said to have occurred on June 18,
1894, and Mrs. Finn died on the 25th of July following.    The
petition further states that for some time after her death, her hus-
band seemed disposed to carry out and perform in good faith his

promise to his deceased wife, even going so far as to make remittances to Mrs. Cassels of moneys received by him in part from the collection of rents and from the sale of a vacant lot in Thomasville, and repeatedly assuring Mrs. Cassels of his intention to carry out every pledge made to his deceased wife. John Finn, up to the time of his death, also paid the school expenses of Alexander Cassels. According to the petition, Finn never denied his parol promise to his deceased wife, but died without executing it. No act of mala fides is alleged, and, so far as we can learn from the petition, it was Finn's intention to perform his promise. His promise to his wife does not appear to have been made with contemporaneous fraudulent intent. The failure to perform a verbal promise made by the sole heir at law of one desiring to dispose of her estate by will to third persons, that he will dispose of her estate as she desires, can not make the heir at law, in case of an intestacy, a trustee ex maleficio as to the property inherited by him, in the absence of actual fraud. There is a line of authorities, both English and American, holding that if a testator be induced to make a devise by the promise of the devisee that it shall be applied to the benefit of another, a trust is thereby created which may be established by parol evidence. Oldham *v.* Litchfield, 2 Vern. 506; Thynn *v.* Thynn, 1 Vern. 296; Williams *v.* Vreeland, 29 N. J. Eq. 417; Williams *v.* Fitch, 18 N. Y. 546; Church *v.* Ruland, 64 Pa. St. 432; Gilpatrick *v.* Glidden, 16 Atl. 464. The reasoning of this line of decisions is strongly put by Gibson, C. J., in Hoge *v.* Hoge, 1 Watts, 163: "It is contended that parol evidence of a trust is contrary to our statute of wills, which corresponds, as far as regards the point in dispute, with the British statute of frauds. Undoubtedly every part of a will must be in writing; and a naked declaration of trust in respect of land devised is void. The trust insisted on here, however, owes its validity, not to the will or the declaration of the testator, but to the fraud of the devisee. It belongs to a class in which the trust arises ex maleficio, and in which equity turns the fraudulent procurer of the legal title into a trustee to get at him; and there is nothing in reason or authority to forbid the raising of such a trust from the surreptitious procurement of a devise." So, in the case of Dixon *v.* Olmius, 1 Cox Ch. 414, the will of Lord Waltham had been revoked by suffering a fine and recovery, and

Lord Waltham desired to republish it, but was fraudulently pre-vented by acts of fraud and violence of Mr. Olmius, the husband of the testator's daughter, who was tenant in tail and entitled to the estate in case the recovery was defeated. Lord Thurlow held that the tenant in tail could not take advantage of her husband's fraud, and that the estate would be treated as if the will had been republished.

The case of Bedilian v. Seaton, 3 Wall. Jr. 279, 3 Fed. Cas. 38, differentiates between a transaction whereby the absolute title is acquired by will by means of a fraudulent promise, and one whereby the title is acquired by inheritance by means of a fraud practiced by the heir at law to prevent his ancestor from making a will otherwise disposing of his estate. The facts of this case are very similar to those of the case at bar, and the distinction sought to be pointed out is that in case of the procurer of the title by will by fraudulent promise of the devisee a trust arises which adheres to the land thus fraudulently obtained, whereas when the title is cast upon the heir by the law such a trust can not be implied; for in the latter case the promise would be a mere parol contract, and not a trust descending with the land. In principle, I am unable to perceive any rational distinction between the two classes of cases. In each the title is procured by means of fraud, and it is the fraud which creates the trust, and not the particular manner by which the result is accomplished. Pervading all the cases cited the dominant note is fraud, and not the mere breach of a parol promise. The Illinois Supreme Court clearly brings out this distinction in Lantry v. Lantry, 51 Ill. 458, wherein it is ruled: "If A voluntarily conveys lands to B, the latter having taken no measures to procure the conveyance, but accepting it and verbally promising to hold the property in trust for C, the case falls within the statute, and chancery will not enforce the parol promise. But if A was intending to convey the land di-rectly to C, and B interfered and advised A not to convey directly to C, but to convey to him, promising if A would do so he, B, would hold the land in trust for C, chancery will lend its aid to enforce the trust, upon the ground that B obtained the title by fraud and imposition upon A." To the same effect, see Fisch-beck v. Gross, 112 Ill. 208. Before one can become a trustee ex maleficio, he must obtain another's property from him by fraud.

We have endeavored to demonstrate that the plaintiffs' cause of action is dependent upon the determination of the conduct of the defendant's husband as fraudulent. That it was not fraudulent is clear from the allegations of the petition. His parol promise appears to have been made in good faith, and the breach thereof was occasioned by his death before fulfillment. Mrs. Susie Finn lived five weeks after her husband made the promise; during this period the husband is not charged to have done any act to prevent the execution of a will. His wife simply relied on a promise, not binding in law but only in conscience. The failure to perform such verbal promise was not per se fraudulent; and as no act of fraud is alleged to have been committed by John Finn whereby he became the owner of the property upon the decease of his wife, he was not a trustee ex maleficio. The demurrer was properly sustained.

*Judgment affirmed. All the Justices concur.*