Summers, C. J.
John O’Kell, an old bachelor, had been for many years a member of Miami Lodge at Dayton, Ohio; he had been a daily visitor at the rooms of the lodge and had spent most of his time there and considered it his home. Fie became sick, and having no heir's of his body and *214 his relatives all being in good circumstances, he desired to will his property to the lodge. In November, 1898, he requested the plaintiff in error, A. Ferris Smart, who was one of the trustees of the lodge, to write his will. Smart persuaded him to have it done by a lawyer, and by direction of O’Kell, went to a lawyer and requested him to draft a will giving the property to the lodge. The lawyer learning that O’Kell probably would not live a year, under the mistaken notion that in that event the bequest would be void under the charitable bequests statute, on that ground advised that O’Kell make an immediate transfer of his property to the lodge. Smart communicated the lawyer’s advice to O’Kell, and later returned to the lawyer with the statement that O’Kell was unwilling to make an immediate transfer, as he might get well and need the property. The lawyer then suggested that what O’Kell wished might be effected by his making a will giving the property to two or three members of the lodge whom he would trust to give it to the lodge. Smart again went to consult O’Kell and returned to the lawyer and stated that his advice would be acted upon, and gave him three names, his own and those of John H. Winder and Lewis P. Williams, the other plaintiffs in error. A will was immediately drafted by the lawyer and executed by O’Kell, giving all of his property to the three persons named, and naming them as executors. In December O’Kell died, his will was probated, the three friends were appointed executors, and in January, 1899, they filed their first and final account showing that they had received more than *215 five thousand dollars and had something more than four thousand dollars for distribution. At different times shortly after O’Kell’s death the executors, severally and to different- members of the lodge, made statements of the purport that O’Kell had given his property to them for the lodge, and that it would be turned over after the time had expired in which his heirs could contest the will. Nothing ever was turned over and in 1906 this action was commenced to recover from the defendants the fund on hand for' distribution together with interest.
The common pleas court found for the lodge, and on error in the circuit court its judgment was affirmed.
Counsel for defendant say that there is no reported case in Ohio, in which a trust has been engrafted on a will by parol, and contend that a beneficiary under a will can be declared a trustee ex maleficio only when the testator was influenced by the legatee’s actual intentional fraud.
Pomeroy on Equity, Section 1054, is cited as follows: “There are a few cases which seem to hold that a trust will arise under these circumstances from a mere verbal promise of the devisee or legatee to hold the property for the benefit of another person. This position is clearly opposed to settled principle. The only ground upon which such a trust can be rested, and is rested by the overwhelming weight of authority, is actual intentional fraud.”
In a note to this section, in the second edition of that work, it is said, “A majority of the recent decisions do not insist on an actual fraudulent in *216 tention on the part of the legatee or devisee as necessary to the creation of a trust of this nature.”
It is conceded that in cases of actual intentional fraud equity will raise a trust, notwithstanding the statute of frauds or the statute of wills. In equity what difference can there be whether the fraudulent intention existed at the time the testator acted or not until it was time for the devisee toi act? In either case the testator acted upon the faith that the devisee would keep his promise; ‘the result of his refusal or failure to do so is the same in either case and equally fraudulent.
The earlier cases are cases in which the devisee .■or legatee had a fraudulent intention at the time the promise was made, but by the weight of authority, in this country, if not also in England, it is well settled that it is immaterial when the intention was formed.
An examination of a great many cases shows that the law is well stated in the opinion of Vann, J., in the case of The Trustees of Amherst College et al. v. Rich et al., 151 N. Y., 282-323, [1897] as follows: “While a testator may make a gift to a legatee solely for the purpose of enabling him, if he sees fit, to dispose of it in a particular way, still, if there is no promise by him, either express or implied, to so dispose of it, and the matter is left wholly to his will and discretion, no secret trust is created, and he may, if he chooses, apply the legacy to his own use. When it clearly appears that no trust was intended, even if it is equally clear that the testator expected that the gift would be applied in accordance with his known wishes, the legatee, if he has made no *217 promise, and none has been made in his behalf, takes an absolute title and can do what he pleases with the gift. Whatever moral obligation there may be, no legal obligation rests upon him. On the other hand, if the testator is induced either to make a will or not to change one after it is made, by a promise, express or implied, on the part of a legatee that he will devote his legacy to a certain lawful purpose, a secret trust is created, and equity will compel him to apply property thus obtained in accordance with his promise. (O’Hara v. Dudley, 95 N. Y., 403; Brown v. Lynch, 1 Paige, 147; Dowd v. Tucker, 41 Conn., 197; De Laurencel v. DeBoom, 48 Cal., 581; Browne v. Browne, 1 H. & J., 430;. Church v. Ruland, 64, Pa. St., 422; Towles v. Burton, 24 Am. Dec., 409; McLellan v. McLean, 2 Head, 684; Russell v. Jackson, 10 Hare, 204; Thynn v. Thynn, 1 Vern., 296; Reech v. Kennegal, 1 Ves. Sr., 124; Wallgrave v. Tebbs, 2 K. & J., 321; McCormick v., Grogan, L. R. [4 Eng. & Ir. App.], 82). The trust springs from the intention of the testator and the promise of the legatee. The same rule applies to heirs and next of kin who induce their ancestor or relative not to make a will by promising, in case his- property falls to them through intestacy, to dispose of it, or a part of it, in the manner indicated by him. (Williams v. Fitch, 18 N. Y., 546; Grant v. Bradstreet, 87 Me., 583; Gilpatrick v. Glidden, 81 Me., 137.) The rule is founded on the principle that the legacy would hot have been given, or intestacy allowed to ensue, unless the promise had been made and, hence, the person promising is bound in equity to-keep it, as to *218 violate it would be fraud. While a promise is essential it need hot be expressly made; for active cooperation or silent acquiescence may have the same effect as an express promise. If a legatee knows what the testator expects of him, and having an opportunity to speak, says nothing, it may be equivalent to a promise, provided the testator acts upon it. Whenever it appears that the testator was prevented from action by the action or silence of- a legatee, who knew the facts in time to act or speak, he will not be permitted to apply the legacy to his own use when that would defeat the expectations of the testator. As was said by this court in the O’Hara case {supra): ‘It matters little that McCue did not make in words a formal' and express promise. Everything that he said and everything that he did was full of that interpretation. When the testatrix was told that the legal effect of the will was such that the legatees could divert the fund to their own use, which was a statement of their power, she was told also that she would only have their honor and conscience on which to rely, and answered that she could trust them, which was an assertion of their duty. Where in such cases the legatee even by silent acquiescence encourages the testatrix to make a bequest to him, to be by him applied for the benefit of others, it has all the force and effect of an express promise.’ The trust does not act directly upon the will by modifying the gift, for the law requires wills to be wholly in writing, but it acts upon the gift itself as it reaches-the possession of the legatee, or as soon as he is entitled to receive it. The theory is that the will has full effect by *219 passing an absolute legacy to the legatee,' and that then equity, in order to defeat fraud, raises a trust in favor of those intended to be benefited by the testator and compels the legatee, as a trustee ex maleficio, to turn over the gift to them; The law, not the will, fastens the trust upon the fund by requiring the legatee to act in accordance with the instructions of the testator and his own promise. Neither the Statute of Frauds nor the Statute of Wills, applies, because the will takes effect as written and proved, but to promote justice and prevent wrong the courts compel the legatee to dispose of his gift in accordance with equity and good conscience. As was well said in Wallgrave v. Tebbs (supra) :
“ ‘Where a person knowing that a testator, in making a disposition in his favor, intends it to be applied for purposes other than his own benefit, either expressly promises or by silence implies that he will carry the testator’s intention into effect, and the property is left to him upon the faith of that promise or undertaking, it is in effect' a case of trust, and in such a case the court will not allow the devisee to set up the Statute of Frauds^- or rather the Statute of Wills, by which the Statute of Frauds is now in this respect superseded— and for the reason that the devisee by his conduct has induced the testator to leave him the property; and, as Lord Justice Turner says in Russell v. Jackson, no one can doubt that if the devisee had stated that he would not carry into effect the intentions of the testator, the disposition in his favor would not have been found in the will. But in this the court does., not violate the *220 spirit of the statute, but for the same end, namely, prevention of fraud, engrafts the trust on the devise by admitting evidence, which the statute would in terms exclude, in order to prevent a party from applying property to a purpose foreign to that for which-he undertook to hold it.’ ”
In the above case, as well as in the earlier case, O’Hara et al. v. Dudley et al., 95 N. Y., 403, which in its facts bears a striking resemblance to the instant case, there was no fraud on the part of the devisees or legatees in procuring the will, but, it was held, that by reason of the act of the testator and the promise of the devisee or legatee the law fastens upon the devisee or legatee a trust which equity, in case of his refusal to perform, will enforce on the ground of fraud. In the latter .case the testatrix, by her will, gave the bulk of her estate to three persons, who were her lawyer, her doctor and her priest, absolutely as tenants in common. It was not intended by her to give to them any beneficial interest, but her design was to devote the property to certain charitable purposes; this she was advised could not be done by an express provision in her will, but only by such an absolute gift to individuals, to whose honor she could confide the execution of her purpose. It was held that the gift could not be sustained as an absolute one to the persons named, as this would be a fraud upon the testatrix. In that case it was expressly found by the trial judge that the devisee practiced no fraud. In the opinion by Finch, J., it is said: (413) “Equity acts in such case not because of a trust declared by the testator, but because of the- fraud of the legatee. For him *221 not to carry out the promise by which alone he procured the devise and bequest, is to perpetrate a fraud upon the devisor which equity will not endure.” Cases are cited and he then continues, “In the last of these cases (Williams v. Fitch, 18 N. Y., 546), the making of a bequest to the plaintiff was prevented by an agreement of the father, who was next of kin, to hold in trust for the plaintiff and the English cases were cited with approval and the trust enforced. All along the line of discussion it was steadily claimed that a plain and unambiguous devise in^ a will could not be modified or cut down by extrinsic matter lying in parol, or unattested papers, and that the statute of frauds and that of wills excluded the evidence; and all along the line it was steadily answered that the devise was untouched, that it was not at all modified, that the property passed under it, but the law dealt with the holder for his fraud, and out of the facts raised a trust, ex maleficio, instead of resting upon one as created by the testator. The character of the fraud which justifies the equitable interference is well described in Glass v. Flulbert (102 Mass., 40, 3 Am. Rep., 418). It was said to consist ‘in the attempt to take advantage of that which has been done in performance or upon the faith of the agreement while repudiating its obligation under cover of the statute.’ ” These cases are followed and approved in Ahrens v. Jones, 169 N. Y., 555, 88 Am. St. Rep., 620 (1902), where jt is held, “Where a deed is executed for the purpose of effecting a distribution of the grantor’s property, upon the express promise of the grantee to pay certain sums to others, *222 though no express trust - is created, a court of equity may interpose to prevent a wrong, and declare. the grantee a trustee ex maleficio for the protection of the grantor’s intended beneficiaries.”
In Ransdel et al. v. Moore et al., 153 Ind., 393, it is expressly held that an actual fraudulent intention on the part of the grantee or devisee is not necessary to the creation of a trust of this nature. In the opinion in that case the cases are reviewed, and many, if not all, of the cases, both English and American are cited, and it is said by Monks, C. J., (408) : “An actual fraudulent intention on the part of the heir or devisee is not necessary to the creation of a trust of this nature. The great weight of authority in England, and in this country, in such a case is that after the death of the testator or intestate; equity will convert the devisee or heir into a trustee, whether when he gave his assent he intended fraud or not; the final refusal of himself, if living, or if dead, of his heirs or devisees, to execute such trust, having the effect to consummate the fraud.” To the same effect is Gilpatrick v. Glidden, 81 Me., 137, where the cases are also reviewed.
In McCormick v. Grogan, 4 Eng. & Ir. App., 82, (1880), the Lord Chancellor (Lord Hatherly) and Lord Westbury do seem to rest the jurisdiction of equity upon the ground of personal fraud in’ procuring the instrument, but later as well as earlier English cases to the contrary are cited in Ransdel v. Moore, supra, as well as many American cases, and what was said by Lord Westbury is here explained, as it is also in Gilpatrick v. Glidden, supra, and by Hall, vice-chancellor, in *223 In re Fleetwood, 15 Ch., 594 [1880], where many cases are reviewed. In Cassels v. Finn, 122 Ga., 33, 106 Am. St. Rep., 91, it is held that failure to perform a verbal promise cannot make the promisor a trustee ex maleñcio in the absence of actual fraud, but in the note to that case, by the learned editor of the American State Reports, it is said that that case could not have been carefully considered, and that it is opposed to all the cases cited in the note and in contravention of correct and sound equitable principle.
Next it is contended that Winder and Williams made no promise and that the court erred in rendering judgment against them. In Russell v. Jackson, 10 Hare, 204, where the bequest was to William Jackson and Thomas Aston Jackson, the vice-chancellor, Turner, said: “But whether Thomas Aston Jackson was present or not, the evidence is, I think, clear that the gift would not have been made to him but for the promise given by William Jackson that the intentions of the testator should be carried into effect; and I fully agree to the principles laid down in Huguenin v. Baseley (14 Ves., 289), followed in many other cases, that no person can claim an interest under a fraud committed by another. However innocent the party may be, if the original transaction is tainted with fraud, that taint runs through the derivative interest, and prevents any party from claiming under it.” In Moss v. Cooper, 1 J. & H., 352 (1861), Vice-Chancellor Sir W. Page Wood, said, (367) : “The only material distinction between a will made on the faith of a previous promise, and a will followed by a promise, is this:' If, *224 on the faith of a promise by A., a gift is made in favor of A. and B., the promise is fastened on to the gift to both, for B. cannot profit by A.’s fraud. But if the will is first made in favor of A. and B., and the secret trust is then communicated only to A., the gift will be fixed with a trust with respect to A., but not so as regards B, ; because in this case the gift to B. is not obtained by the procurement of A., and is not tainted with any fraud in procuring the execution of the will. That is the sole distinction between the case of a will made on the faith of a promise, and that of a will followed by a subsequent promise.” In In re Stead, 1 Ch., 237 (1900), it is said by Farwell, J., (241): “If A. induces B. either to make, or to leave unrevoked, a will leaving property to A. and C. as tenants in common, by expressly promising, or tacitly consenting, that he and C. will carry out the testator’s wishes, and C. knows nothing of the matter until after A.’s death, A. is bound, but C. is not bound (Tee v. Ferris, 2 K. & J., 357) ; the reason stated being, that to hold otherwise would enable one beneficiary to deprive the rest of their benefits by setting up a secret trust. If, however, the gift were to A. and C. as joint tenants, the authorities have established a distinction between those cases in which the will is made on the faith of an antecedent promise by A. and those in which the will is left unrevoked on the faith of a subsequent promise. In the former case, the trust binds both A. and C. (Russell v. Jackson, 10 Hare, 204; Jones v. Badley, L. R. 3 Ch., 362), the reason stated being that no person can claim an interest *225 under a fraud committed by another; .in the latter case A. and not C. .is bound (Burney v. Macdonald, 15 Sim., 6, and Moss v. Cooper, 1 J. & H., 352), the reason stated being that the gift is not tainted with any fraud in procuring the execution of the will. Personally I am. unable to see any .difference between a gift' -made on the faith of an antecedent promise and a gift left unrevoked on the faith of a subsequent promise to carry out ' the testator’s wishes.” There is no joint tenancy in this state and the distinction made in the English cases cannot be made here. The reason for the distinction would apply here only in cases of separate devises or bequests. In the present case the bequest is a joint bequest of all the testator’s property to the three persons named.. It was all intended for the lodge and made to the three .upon the promise of one that they would give it to the lodge. The question was considered in the two New York cases already referred to, in one of which there was a joint tenancy and in the other a tenancy in common. In The Trustees of Amherst College et al. v. Ritch et al., 151 N. Y., 282, 327, it is said by Vann, J.: “The intention of. the testator being thus clear, the secret trust was completed by the promise made by or on behalf of the residuary legatees. As the gift was to them as tenants in common, a promise that bound all was necessary in order to include each of the three shares. That Mr. Ritch and Mr. Vaughan duly promised appears so conclusively from their conduct, letters and' statements to the testator, that we do not regard any further expression of our views upon the subject as necessary.. It is, *226 however, strenuously urged that Mr. Bulkley made no promise, and hence that the secret trust did not extend to his share of the gift.. If he were the only residuary legatee the question would be more serious, but he was not. The trial court found that Messrs. Ritch and Vaughan promised for themselves and for Mr. Bulkley, and the evidence plainly warrants this conclusion. The General Term, in its opinion, went farther and declared that there was an understanding between Mr. Bulkley and the testator to the same effect, but the evidence to sustain this conclusion is meager, although we do not hold it was insufficient. Assuming, however, that Mr. Bulkley made no promise, still we think that he was bound, under the circumstances, by the promise made in his behalf, and that he cannot profit by the action of his co-tenants in making the promise for him, as that would be a fraud. He was not a purchaser; he furnished no consideration; there was no contract for his benefit; he was in the attitude of accepting a gift pure and simple, but that gift was made in reliance upon a promise given in his behalf. Can he violate the promise and fairly take that which came to him solely on account of the promise, even if it was not made or authorized by him? We think not, because his title came through the promise, and by accepting the gift he ratified the promise. He must repudiate . the gift or accept the responsibility. While the cases are not uniform, the weight of authority sustains this conclusion. (Hooker v. Axford, 33 Mich., 453; Moss v. Cooper, 1 J. & H., 367; Tee v. Ferris, 2 K. & J., 357; In re *227 King’s Éstate, L. R. [21 Ir.], 273; O’Kara v. Dudley, supra.) In the case last cited this court said: 'So far, then, as McCue is concerned, he stands in the attitude of having procured and induced the testatrix to make a devise or bequest to himself and his associates by asserting its necessity, and promising faithfully to carry out the charitable purposes for which it was made, and whether his associates knew or promised, or did not, makes .no difference where the' devise is to them as joint tenants, and all must get their rights through the result accomplished by one.’ Although the devise in that case was to joint tenants,' the principle that 'all must get their rights through the result accomplished by one’ is broad and equitable, and should not be limited to the technicality of a joint tenancy as distinguished from a tenancy in common, where, as in this case, the promise was made by two in behalf of themselves and another, and a devise thus obtained to the three. This rule prevents fraud, which is the primary object of the courts in enforcing secret trusts, while any other would promote fraud. We thus reach the conclusion that there was a secret trust that bound all of the residuary legatees.”
It is further contended that the court erred in admitting the separate admissions of the several defendants, made after the death of the testator and not in the hearing of each other. A trust in an absolute devise may be established by parol evidence of contemporaneous declarations of the testator and subsequent declaration of the devisee in possession, that the devise was made for the benefit of a third person upon the devisee’s suggestion *228 and promise to hold it in trust. After such evidence of the devisee's active or passive agency in procuring the devise, he will be declared a trustee ex maleficio and the trust will be enforced against him. See cases cited in the note to Cassels v. Finn, supra, 106 Am. St. Rep., 91-99. In Harvey v. Gardner, 41 Ohio St., 642, it is held that in this state it is competent to prove an express trust in land by parol evidence, and that the contemporaneous declarations of the creator of the trust ' are admissible in evidence, and further that the acceptance of the trust may be presumed from acts of the grantee at or subsequent to the time of the grant. See also Russell et al. v. Bruer et al., 64 Ohio St., 1; 1 Jarman on Wills, 390. In Church v. Ruland, 64 Pa. St., 432-442, it is said: “Indeed it is not easy to see how such a trust ever could be made out except by parol evidence, and if this is not competent a statute made to prevent frauds would become a most potent instrument whereby to give them success. That this doctrine is applied to cases arising under wills where a person procures a devise to be made in his favor on the distinct declaration or promise that he will hold the land in trust either in whole or in part for another may be seen in the cases. It is not affected by the statutory provisions on the subject of wills. The proof offered is not of any alteration, revocation or cancellation, which must be evidenced in a particular manner. It gives full effect to the will and every word of it, and to the conclusiveness of the probate, where it is conclusive. It fastens upon the conscience of the party, having thus procured a will, and then *229 fraudulently refusing or neglecting to fulfill the promise on the faith of which it was executed, a trust or confidence, which a court of equity will enforce by compelling a conveyance when the proper time for it has arrived.”
It is next contended that the action was barred by the six years’ statute of limitations. The six years’ statute bars an action upon a contract not in writing, either express or implied. This is not an action upon a contract. It is an action for relief on the ground of fraud. Such actions are barred within four years, but it is expressly provided that the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud, and it is not suggested that the lodge discovered the fraud more than four years before the commencement of the action.
It is next contended that the trial court disregarded the rule laid down in Russell et al. v. Bruer et al., supra, that “the declaration of such trust must be contemporaneous with the deed, and the evidence beyond a reasonable doubt as to the existence of the trust, and must be clear, certain, and conclusive as to its terms and conditions.” Without reviewing the evidence we deem it sufficient to say that it does not leave a reasonable doubt that the testator intended to give his property to the lodge, that he was induced to will it to the defendants by the advice of the lawyer upon the promise of Smart that he and the other legatees would give it to the lodge. The lawyer so testifies and his testimony was corroborated in many ways, and no reason is apparent why the testator should give his property to the defendants, and *230 they suggest none; and there is evidence that each of them, immediately after the testator’s death and before avarice had found time to suggest that they divide the estate between themselves, admitted that it was intended for the lodge. The -terms and conditions are clear, certain and conclusive. There are none, excepting that it was to be turned over to the lodge. We reaffirm the rule and also the statement in Collins et al. v. Hope et al., 20 Ohio, 493, that in such cases, courts will act with the extremest caution.

Judgment affirmed.

Grew, Spear, Davis and Price, JJ., concur.