S97A0050. EDWARDS et al. v. EDWARDS.
(482 SE2d 701)

FLETCHER, Presiding Justice.

Two sons seek to impress an implied trust on 25.47 acres of land that their father acquired under their mother's will. The trial court granted summary judgment to the father and the sons appeal. We affirm the grant of summary judgment concerning Bobby Edward's claim, but reverse the grant concerning Billy Edward's claim because there is a disputed issue of material fact whether a constructive trust was created.

The procedural posture in this case requires us to view the facts, which are drawn from the pleadings, affidavits, and depositions, in the light most favorable to appellants Bobby and Billy Edwards as the parties opposing summary judgment. Ronnie, Bobby, and Billy Edwards are the sons of Jeanette Short Edwards and appellee David Edwards and the grandsons of Keff and Retha Short. Viewed in the light most favorable to Bobby and Billy, the record shows that Keff Short originally owned the 25.47 acres as a portion of a larger tract that he left to his wife Retha Short in his will. She and her two children agreed that the property would pass eventually to her grandchildren, Ronnie, Bobby, and Billy, as she designated in her will. After Ronnie and Bobby expressed an interest in other land on the "backside" of their grandmother's property, their grandmother, mother, and father agreed that Billy would receive the 25.47 acres on which the homeplace was located. Since David and Jeanette lived on the property with the boys' grandmother, they agreed that Billy was to receive the property only after both of his parents died.

In February 1986, their mother executed her will leaving all of her property to her husband. In July 1986, their grandmother executed a deed conveying her property to their mother. The deed was executed at their father's behest to guarantee that their grandmother would qualify for government assistance if she were required to enter a nursing home. At the time, their grandmother, mother, and father

knew that Jeanette Short held the property for the ultimate benefit of her sons. Retha Short died later that year, and Ronnie and Bobby each received approximately 25 acres of land from the "backside" of her property through a deed from their mother, Jeanette. When she died in 1991, her husband received a deed of assent giving him legal title to the 25.47 acres. After he remarried and placed the property for sale, his sons filed this action seeking to stop the sale and impress a trust on the property for Billy's benefit.

1. The 1991 Georgia Trust Act defines an "implied trust" as "a trust in which the settlor's intention to create the trust is implied from the circumstances, and which meets the requirements of Code Sections 53-12-90 through 53-12-93."[1] OCGA § 53-12-90 states that an implied trust is either a resulting trust or a constructive trust. An implied resulting trust can arise under three circumstances: (1) an express trust is created but fails for any reason; (2) a trust is fully performed without exhausting all of the trust property; and (3) a purchase money resulting trust is established.[2]

Even construing the facts in the light most favorable to the sons, we conclude that they have failed to allege a disputed issue concerning the existence of a resulting trust. They have not alleged any of the circumstances enumerated under the statute by which the trier of fact could determine that their mother intended for her husband to hold the property in trust for their son. Specifically, the sons presented no evidence that an express trust was created, a trust was fully performed without exhausting all of the trust property, or they paid consideration for legal title of the property to be transferred to their father.

2. The second kind of implied trust is a constructive trust. OCGA § 53-12-93 defines a constructive trust as "a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." In cases involving implied trusts, the court may hear parol evidence on the nature of the transaction, the circumstances, and the parties' conduct.[3]

Again construing the evidence in the light most favorable to the sons, we find that they have raised a disputed issue of material fact concerning whether a constructive trust should be implied based on the circumstances. They contend that their father agreed with their grandmother and mother that the 25.47 acres would remain in the family and eventually go to Billy as his share of his maternal grand-

---

[1] OCGA § 53-12-2.
[2] OCGA § 53-12-91.
[3] OCGA § 53-12-94.

parents' property. The family discussed the agreement at various holiday gatherings. Their grandmother executed a will consistent with that promise, but at David Edwards' direction deeded the property to her daughter. After Retha Short died a few months later, their mother gave both Ronnie and Bobby a deed to approximately 25 acres of their grandmother's land, consistent with the alleged agreement. Billy, the remaining grandson, did not inherit his share of the property because he was to receive the 25.47-acre homeplace after his parents died. To allow the father to sell the property while holding it for Billy's ultimate benefit would result in the father's unjust enrichment. Since this evidence is sufficient to raise a disputed issue of material fact whether David and Jeanette Edwards agreed with Retha Short to hold the homeplace in trust for Billy, we reverse the trial court's grant of summary judgment on Billy's claim.[4]

3. We affirm the grant of summary judgment concerning Bobby Edwards because he testified that he was not asserting any personal claim to the disputed 25.47 acres.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Benham, C. J., and Carley, J., who dissent in part.*

CARLEY, Justice, concurring in part and dissenting in part.

I concur in the majority's affirmance of the grant of summary judgment in favor of David Edwards (Father) on the claim of Bobby Edwards. However, I believe that the trial court also correctly granted summary judgment in favor of Father on the claim of Bill Edwards (Son). Accordingly, I must respectfully dissent to the majority's reversal of that order of the trial court.

OCGA § 53-12-93 (a) defines a "constructive trust" as a trust which is

> implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity.

Such a trust is "sometimes referred to as a trust ex maleficio. . . ." *Mays v. Perry*, 196 Ga. 729, 734 (27 SE2d 698) (1943). The law is clear that, insofar as real property is concerned, the principle of constructive trusts "can never be applied when there is nothing more than a broken verbal promise (otherwise the statute of frauds would be virtually abrogated). . . ." *Mays v. Perry*, supra at 735. "[I]n order for

---

[4] See *Conner v. Conner*, 250 Ga. 27, 29 (295 SE2d 739) (1982) (trial court erred in granting motion to dismiss when evidence at trial was sufficient to raise a jury issue of existence of implied trust).

such a promise to be the basis of a constructive trust it must have been made with the intention of being broken and for the purpose of thereby obtaining title. . . ." *Mays v. Perry*, supra at 735-736.

> [W]here, as here, the question involves a deed to land, and the legal title to the land is sought to be recovered by the enforcement of an oral agreement to reconvey it, fraud must have existed contemporaneously with the acquisition of the land by the one who is sought to be charged as trustee ex maleficio. [Cit.]

*Bennett v. Bennett*, 212 Ga. 128, 129 (91 SE2d 29) (1956). See also *Davis v. Davis*, 237 Ga. 448 (228 SE2d 838) (1976) (directed verdict).

Son's maternal grandmother may have promised to give or leave the land to him, but she never made an inter vivos gift to him and she did make an inter vivos conveyance of the land to Son's mother. See *Tucker v. Addison*, 265 Ga. 642 (1) (458 SE2d 653) (1995). Father may have urged Son's grandmother to make this conveyance, but he did not obtain title to the land as a result, since the land was conveyed not to him, but to his wife. Son contends that it was his grandmother's intent that he have the homeplace after the death of his parents. If that were his grandmother's intent, however, she could have provided for life estates in her daughter and son-in-law, at the termination of which Son would be vested with the remainder fee interest. She did not do this, but conveyed the land to her daughter in fee simple. Accordingly, with regard to Son's grandmother, his allegation of a constructive trust shows no more than a broken oral promise to give or leave the land to him.

Son also may have been promised the land by his mother, but she never made an inter vivos gift of the land to him and provided in her will that the land would go to Father. There is no evidence that Father urged his wife to leave the land to him rather than Son and, even if there were, there is no evidence that Father did so fraudulently. Son contends that it was his mother's intent that he have the homeplace after she and Father died. If that had been his mother's intent, however, she could have conveyed the property to him, but reserved a life estate in herself and Father or devised a vested remainder to Son following the termination of a life estate in Father. Instead, she retained title throughout her life and then devised the land to Father in fee simple. Accordingly, as to Son's mother, his allegation of a constructive trust shows only an oral promise which was not fulfilled by the provisions of her will.

It may seem unfair that Son's two siblings obtained a portion of the "family" land, and Son has not. However, Son's siblings received their portions of the land by means of a written conveyance from

their mother, but no title has been conveyed or devised to Son. Mother devised her remaining land to Father and Father now owns it. If Father refuses to convey the land to Son, then Son is entitled to the land only if a constructive trust can be implied against Father. A constructive trust cannot be implied if Son can show nothing more than a mere broken oral promise. There is absolutely no evidence that Father acquired his title to the property by means of a promise which he never intended to keep. Even assuming that Father broke an oral promise to Son's grandmother to convey the homeplace to her grandson, there is nothing to show that his promise was false when he made it.

> The failure to perform a verbal promise made by the sole heir at law of one desiring to dispose of her estate by will to third persons, that he will dispose of her estate as she desires, can not make the heir at law, in case of an intestacy, a trustee ex maleficio as to the property inherited by him, in the absence of actual fraud.

*Cassels v. Finn*, 122 Ga. 33, 36 (49 SE 749) (1905). Moreover, as previously noted, Father obtained his title from his wife, rather than Son's grandmother, and there is no evidence that Father made a fraudulent promise to his wife that he would convey the property to Son. If Son can recover under the evidence in this case, the title of any owner of land can be challenged successfully on the basis of an alleged oral agreement made at some time in the past to convey title at some time in the future. It certainly is not inequitable for Father to retain title to land that he obtained non-fraudulently, since it would violate the statute of frauds for Son to take title without any writing to support his ownership. To hold that summary judgment in favor of Father is unauthorized is, in my opinion, a clear abrogation of OCGA § 13-5-30 (4), which requires "[a]ny contract for sale of lands, or any interest in, or concerning lands" to be in writing. *Mays v. Perry*, supra at 736. Accordingly, I dissent to the majority's reversal of the grant of summary judgment in favor of Father against Son's constructive trust claim.

I am authorized to state that Chief Justice Benham joins in this opinion.

DECIDED FEBRUARY 24, 1997 —
RECONSIDERATION DENIED APRIL 3, 1997.

*John T. Brown,* for appellants.
*Davidson, Hopkins & Booth, Joseph H. Booth,* for appellee.