A01A0172. DODD v. SCOTT et al.

(550 SE2d 444)

MILLER, Judge.

In 1973 W. J. Dodd purchased ten acres and built a home. He conveyed six of the undeveloped acres back to the original owner, whose successor in interest sold the land back to Dodd in 1982. Two years later, with no consideration passing hands, Dodd conveyed the six acres to his daughter Jenifer Scott and to her husband David Scott. When Dodd died, his wife Joyce claimed that the Scotts held the six acres in an implied trust for Dodd or his estate, and as assignee of the estate Joyce filed a complaint to have title declared as belonging to the estate. The Scotts denied the existence of any implied trust, maintaining that the property was theirs outright. The trial court entered summary judgment in favor of the Scotts, holding that the evidence proffered by Joyce to show an implied trust was

inadmissible hearsay and that therefore the only evidence before the court showed an outright gift to the Scotts.

The questions on appeal are whether all of Joyce's evidence was inadmissible hearsay and whether any admissible evidence supported the finding of an implied trust.[1] Although the court did not abuse its discretion in excluding some of Joyce's evidence as inadmissible hearsay, it erred in its reasoning in excluding other portions of that evidence, and it overlooked relevant, nonhearsay evidence. Thus, we affirm in part, reverse in part, and vacate in part.

1. The proper context for analyzing these questions requires a review of the law of implied trusts. In 1991 the General Assembly enacted the "Georgia Trust Act,"[2] which applied to all trusts regardless of the date they were created (except to the extent such would impair vested rights and except as otherwise provided by law).[3] Under this Act, "[a]n implied trust is either a resulting trust or a constructive trust."[4]

(a) *Resulting Trusts.* OCGA § 53-12-91 defines a resulting trust as one implied for the benefit of the settlor or the settlor's successors in interest "when it is determined that the settlor did not intend that the holder of the legal title to the trust property also should have the beneficial interest in the property. . . ." But one of the following circumstances must also be present: (1) an express trust was created but failed (in whole or in part) for any reason, (2) an express trust was fully performed without exhausting all the trust property, or (3) a purchase money resulting trust was established.[5] Since no express trust is alleged or shown in the present case, the only possible resulting trust here would be a purchase money resulting trust.

On appeal Joyce does not argue that the facts establish a purchase money resulting trust, but argues only that a constructive trust is shown. Indeed, a purchase money resulting trust is only presumed to exist for the benefit of one who pays consideration for the transfer of title to property to another person.[6] That would mean here that the evidence would have to show that Dodd paid consideration for legal title in the property to be transferred to the Scotts.[7] But

---

[1] Joyce filed this appeal with the Supreme Court of Georgia. Since the equitable relief of an implied trust was ancillary to the evidentiary question enumerated on appeal, that Court concluded its exclusive equity jurisdiction was not invoked and transferred the matter to the Court of Appeals. Cf. Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (2). Notably, all the cases cited in this opinion concerning implied trusts, which are equitable instruments, and concerning the evidence needed to show same, emanate from the Supreme Court of Georgia.

[2] Ga. L. 1991, p. 810, § 1; see OCGA § 53-12-1 et seq.

[3] OCGA § 53-12-3.

[4] OCGA § 53-12-90.

[5] OCGA § 53-12-91.

[6] *Burt v. Skrzyniarz*, 272 Ga. 35, 37 (2) (526 SE2d 848) (2000); see OCGA § 53-12-92 (a).

[7] *Edwards v. Edwards*, 267 Ga. 780, 781 (1) (482 SE2d 701) (1997); see *Eason v. Farmer*, 261 Ga. 675, 676 (1) (409 SE2d 509) (1991).

no evidence shows that Dodd paid consideration to have the property transferred to the Scotts. Rather, Dodd purchased the property two years before he transferred the property to the Scotts. Thus, the evidence does not show the establishment of a purchase money resulting trust.[8]

(b) *Constructive Trusts*. OCGA § 53-12-93 (a) defines constructive trusts as those "implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity."[9] Thus, where a person who receives property agrees to hold it for the benefit of another, that person may not use or sell it for his or her own benefit, for to do so would result in that person's unjust enrichment, a violation of an equitable principle.[10] In such circumstances a constructive trust arises which requires the person to hold the property in trust for the intended beneficiary. Accordingly, the question in this case is whether the evidence proffered by Joyce showed that when the Scotts received the six acres in 1984, they agreed to hold the six acres in trust for Dodd or his estate.

2. The trial court found three categories of evidence proffered by Joyce inadmissible as hearsay: (1) Joyce's deposition testimony about a deathbed statement Dodd made to her that he wanted her "to have the acreage and the house, the whole ten acres"; (2) an affidavit from Joyce's sister and one from Dodd's sister that Dodd told each of them that he considered the six acres as part of his homeplace and that Jenifer held the title to the acreage in trust with the understanding she would transfer title to his estate on his death; and (3) Joyce's deposition testimony about statements Dodd made to her over the years that the six acres were "our land." In her first two enumerations of error, Joyce contends the court erred in finding the first two categories inadmissible. Since Joyce does not enumerate the exclusion of the third category as error, we will not address such.

Private statements made to relatives by a person since deceased that he owned certain property or that certain property he had transferred was in fact held in trust for him or his estate are in his interest and are not a matter of public interest and thus are hearsay not subject to the exceptions set forth in OCGA §§ 24-3-8 and 24-3-9. They would therefore be admissible "only in specified cases from necessity."[11]

The necessity exception requires two findings before the hearsay

---

[8] *Edwards*, supra, 267 Ga. at 781 (1).
[9] Id. at 781 (2).
[10] Id. at 782 (2).
[11] OCGA § 24-3-1 (b).

evidence is admissible: "a finding that the hearsay is necessary, and a finding that the declarant's hearsay statement is surrounded by particularized guarantees of trustworthiness."[12] Where the declarant is deceased, the hearsay is deemed necessary if the hearsay proponent shows "that the statement is relevant to a material fact and that the statement is more probative on that material fact than other evidence that may be procured and offered."[13] If this threshold is met, the court then examines the question of trustworthiness, which is an inquiry into indicia of reliability.[14] Basically, the court determines whether there is "something present which the law considers a substitute for the oath of the declarant and his cross examination by the party against whom the hearsay is offered."[15]

Two general principles apply to our review of these issues. First, the admission of evidence is generally a matter resting largely within the sound discretion of the trial judge.[16] Second, and nevertheless, because Georgia favors the admission of any relevant evidence, no matter how slight its probative value,[17] evidence of even doubtful relevance should be admitted.[18] Thus, the inquiry before us is whether the trial court's exclusion of the hearsay evidence as not fitting the necessity exception is an abuse of that discretion.[19]

(a) *Deathbed Statement.* The court found that Dodd's deathbed statement to Joyce that he wanted her "to have the acreage and the house, the whole ten acres," was not relevant to the issue of whether the Scotts had received the six acres with the understanding that they would hold the property in trust for the benefit of Dodd or his estate. Since the court concluded the statement was irrelevant, the court did not address whether the information was available from better sources or whether it met the trustworthiness test.

"[E]vidence is relevant if it renders the desired inference more probable than it would be without the evidence."[20] "[E]very act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant."[21] At about the same time Dodd allegedly stated that he wanted Joyce to have the house and the whole ten acres, Dodd's will was read to Joyce and Jenifer, in which Dodd bequeathed his "home located on Sardis Church Road" to Joyce. Dodd had

---

[12] (Citation omitted.) *Clark v. State*, 271 Ga. 6, 9 (5) (515 SE2d 155) (1999).

[13] (Citation and punctuation omitted.) Id. at 10 (5).

[14] Id.

[15] (Citation and punctuation omitted.) Id.

[16] *Baker v. State*, 246 Ga. 317, 319 (3) (271 SE2d 360) (1980).

[17] Id.

[18] *Lewis v. Emory Univ.*, 235 Ga. App. 811, 817 (2) (509 SE2d 635) (1998).

[19] Id.; see *White v. White*, 262 Ga. 168, 169 (415 SE2d 467) (1992).

[20] (Citation omitted.) *Baker*, supra, 246 Ga. at 319 (3).

[21] (Citations and punctuation omitted.) *David Jordan Logging Co. v. Sales*, 203 Ga. App. 410, 411 (2) (416 SE2d 803) (1992).

referred to the home and ten acres as a single property owned by him in sworn financial disclosure documents filed with governmental authorities years after the conveyance to the Scotts. Thus, Dodd's statement tends to make more probable that he had an agreement with the Scotts that they were holding the six acres in trust for him or his estate. Otherwise, Dodd would not have implied to Joyce that he had the power to direct the transfer of the entire ten acres to her. The court abused its discretion in holding the statement was not relevant to the issues at hand.

Nevertheless, this does not mean that this hearsay statement is necessarily admissible. The court in its sound discretion must address the other factors, particularly the trustworthiness issue, before determining the admissibility of the statement. We therefore merely vacate that portion of the order excluding this testimony.[22] Should the admissibility of this evidence arise again, the court may reconsider the matter in light of the holdings of this opinion. In this regard, we note for the benefit of the trial court that, contrary to the argument made by the Scotts in their appellate brief, the fact that the statement benefits the witness purporting to hear the statement and offering it as evidence is not a factor in determining the trustworthiness of the statement for admissibility purposes.[23]

(b) *Statements to Dodd's Sister and Sister-in-law.* Dodd's sister and sister-in-law both submitted affidavits that he told each, after the conveyance of the six acres to the Scotts, that he actually owned the six acres as part of his homeplace and that Jenifer held legal title to the six acres in trust with the understanding that she would transfer the property to his estate on his death. Concluding the statements were inadmissible hearsay, the court found that although they were relevant, they did not meet the trustworthiness test, in that the statements were "clearly self-serving." Joyce challenges this latter finding.

Evidence supported the court's finding that the statements were not sufficiently reliable. It was in Dodd's self-interest to state that property he had given to the Scotts was in fact still his property and that Jenifer had promised to hold the property in trust to be transferred to his estate on his death. This would give Dodd the power to determine to whom the property would be devised. Where the statements are in the self-interest of the declarant, a court has clear reason to find them insufficiently reliable to meet the necessity exception of OCGA § 24-3-1 (b). "It is a general rule that self-serving declarations — that is, statements favorable to the interest of the

---

[22] See *Rowe v. Akin & Flanders, Inc.*, 240 Ga. App. 766, 770 (3) (525 SE2d 123) (1999).

[23] *Swain v. C & S Bank &c.*, 258 Ga. 547, 550 (1) (372 SE2d 423) (1988). See also *Cole v. Cole*, 205 Ga. App. 332, 333 (2) (422 SE2d 230) (1992).

declarant — are not admissible in evidence as proof of the facts asserted. . . ."[24] The subsequent death of the declarant does not change this rule.[25] Thus, the court did not abuse its discretion in refusing to consider their affidavits in the summary judgment context.[26] This portion of the order is affirmed.

3. Beyond this hearsay evidence, other nonhearsay evidence created an issue of fact as to the material issue of whether the Scotts had agreed to hold the six acres in trust for Dodd or his estate. In summary judgment proceedings, the nonmovant should be given the benefit of all reasonable doubt, and the trial court should construe the evidence and all inferences and conclusions possibly arising therefrom most favorably toward the nonmovant.[27]

OCGA § 53-12-94 provides that "[i]n all cases in which a trust is sought to be implied, the court may hear parol evidence of the nature of the transaction, the circumstances, and the conduct of the parties, either to imply or rebut the trust." Construing similar language from the former trust statutes, *Harrell v. Harrell*[28] concluded:

> [C]ircumstances may be offered as evidence of an intention (whether or not expressly articulated by each party) that title shall vest in one and beneficial ownership in the other. The scope of such evidence includes all of the facts and circumstances surrounding the transaction. The ultimate inquiry is whether there was, in truth, a mutual understanding, *not* whether such an understanding was expressed in plain and unambiguous terms. . . . Any evidence which might cast light upon this issue should be admitted to aid the jury in its factual determination.[29]

Thus, conduct and declarations of the parties subsequent to the transfer, which are consistent with an agreement to hold the property for the benefit of another, may be evidence of a constructive trust.[30] Here Joyce presented evidence that (1) Dodd obtained the six acres in 1982 so that nobody would live close to his residence; (2) at the time of the transfer to the Scotts, Joyce understood from Dodd

---

[24] (Citations and punctuation omitted.) *Swain*, supra, 258 Ga. at 549 (1).

[25] Id.

[26] See OCGA § 9-11-56 (e); *Wheat v. Montgomery*, 130 Ga. App. 202, 204 (5) (202 SE2d 664) (1973).

[27] *Orion Capital Partners v. Westinghouse Elec. Corp.*, 223 Ga. App. 539, 541 (1) (478 SE2d 382) (1996).

[28] 249 Ga. 170, 172 (290 SE2d 906) (1982).

[29] (Emphasis in original.) Id.

[30] *Edwards*, supra, 267 Ga. at 781-782 (2); see *Conner v. Conner*, 250 Ga. 27, 28-29 (1), (2) (295 SE2d 739) (1982); *C & S Nat. Bank v. Martin*, 246 Ga. 756, 757 (1) (272 SE2d 711) (1980).

that the purpose for the transfer was to have title to the property held in the Scott name so that the politically well-known Dodd name was not associated with it and so that the original owner would not be aware that he had reacquired the property; (3) subsequent to the transfer and until his death fourteen years later, Dodd paid the taxes on the six acres and showed the acreage as belonging to him on his tax returns and in sworn financial disclosure statements filed with governmental authorities; and (4) subsequent to the transfer, Dodd considered and treated the property as his own, as demonstrated in his planting fruit trees on it and then collecting the insurance proceeds when those trees were damaged, in his running water onto the land for a garden, in his repeatedly bush hogging the property, in his discussing the building of a garage on the property, in his giving neighbors permission to ride on the property, and in his using the property as collateral for a loan. In addition to admitting that she had done nothing to upkeep or improve the property, Jenifer herself testified that in Dodd's financial statements which she prepared for bank loans for him after the transfer, she listed the six acres as belonging to Dodd because she "felt like he paid the taxes, [so] he ought to get the benefit."

Aside from the evidence excluded by the trial court, these declarations and conduct of Dodd and Jenifer subsequent to the transfer constitute evidence, possibly clear and convincing,[31] which makes more probable the inference that the Scotts took the six acres in trust for Dodd or his estate. There being a disputed material issue of fact, the trial court erred in granting summary judgment to the Scotts.[32] Summary judgment is reversed.

*Judgment affirmed in part, reversed in part and vacated in part. Andrews, P. J., and Eldridge, J., concur.*

DECIDED JUNE 8, 2001.

*Smith, Gilliam, Williams & Miles, Robert A. Weber, Jr.*, for appellant.

*Stewart, Melvin & Frost, Frank Armstrong III*, for appellees.

---

[31] OCGA § 53-12-92 (c).
[32] *Edwards*, supra, 267 Ga. at 782 (2).