[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10717
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 20, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00233-CV-CAR-5

DAMIANA ABIORO,
As Legal Guardian, In and
For The Minor Child, J.M.A.,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(October 20, 2008)**

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Damiana Abioro appeals the district court's affirmance of the Commissioner

of Social Security's determination that Abioro was overpaid $9,412.02 in Supplemental Security Income (SSI) on behalf of her granddaughter. She asserts two issues on appeal, which we address in turn.

I.

Abioro is the guardian of her granddaughter, who started receiving SSI benefits in 1996. Abioro's granddaughter was involved in a class action lawsuit against a drug manufacturer, and, after the case settled, she received three checks: (1) $10,000 in January 1999; (2) $6,600 in April 1999; and (3) $1,492.80 in August 2001. Abioro put the funds into three separate accounts, each marked as a "custodial account," soon after receiving each check. Before the ALJ, Abioro testified she wanted to make sure that her granddaughter could not access the money until she turned 18 years' old.

Abioro asserts the accounts established for her granddaughter were not an available resource and, therefore, she was not overpaid in SSI benefits. She contends the Commissioner erred in analyzing the issue because he did not address the issue of trust creation under Georgia law.

"Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284

F.3d 1219, 1221 (11th Cir. 2002) (citing 42 U.S.C. § 405(g)). "Substantial evidence must do more than create a suspicion of the existence of the fact to be established." *Wilson*, 284 F.3d at 1221 (quotation and citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Id.* (citation omitted). We review the district court's decision on whether substantial evidence supports the ALJ's decision *de novo*. *Id.* (citation omitted). Despite the deferential substantial evidence standard, this Court looks at the record as a whole to determine the reasonableness of the Commissioner's decision. *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). The Commissioner's determination of the proper legal standards is not entitled to a presumption of validity. *Id.*

The Social Security Act conditions eligibility for disabled individuals to receive SSI benefits on meeting income and resource requirements. 42 U.S.C. § 1382(a)(1)(A) and (B). An individual without a spouse cannot have resources that exceed $2,000, unless those resources are excluded. *Id.*, (a)(1)(B), (a)(3)(B). In turn, the applicable regulation defines "resources" as "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a). When the Commissioner finds that more than the correct

3

amount of benefits has been paid to an individual, the Commissioner "shall" recover the excess funds from that individual. 42 U.S.C. § 1383(b)(1)(A).

As noted above, certain resources are exempt from being counted towards an individual's $2,000 maximum. 42 U.S.C. § 1382(a)(3)(B). The SSA Programs Operations Manual System (POMS) states that for trusts established prior to January 1, 2000, "[i]f an individual does not have the legal authority to revoke the trust or direct the use of the trust assets for his/her own support and maintenance, the trust principal *is not* the individual's resource for SSI purposes." POMS SI 01120.200(D)(2) (emphasis in original). It further notes the revocability of a trust and the ability to use the trust principal "depends on the terms of the trust agreement and/or on State law." *Id.* In 1999, the law was amended to state that for trusts established on or after January 1, 2000, the corpus of any revocable trust is a resource. 42 U.S.C. § 1382b(e)(3)(A); POMS SI 01120.201(D). For irrevocable trusts, only the portion of the trust from which "payment from the trust could be made to or for the benefit of the individual" is considered a resource. *Id.*

According to Georgia statutes, an "express trust" is "a trust in which the settlor's intention to create the trust is expressly stated, and which meets the requirements of Code Section 53-12-20." O.C.G.A. § 53-12-2(2). Section 53-12-20 states that an express trust "shall be created or declared in writing," and have

4

the following elements, "ascertainable with reasonable certainty: (1) An intention by a settlor to create a trust; (2) Trust property; (3) A beneficiary; (4) A trustee; and (5) Active duties imposed on the trustee, which duties may be specified in the writing or implied by law." The writing may be informal. *Id.*, cmt. 1. In addition, while the trust must be writing, "[n]o formal words are necessary to create an express trust." O.C.G.A. § 53-12-21. Rather, "[a]ll that is required is that a manifest intention must be found that another person shall have the benefit of the property in question." *Odum v. Henry*, 334 S.E.2d 304, 305-06 (Ga. 1985).

Alternatively, an "implied trust" is "a trust in which the settlor's intention to create the trust is implied from the circumstances, and which meets the requirements of Code Sections 53-12-90 through 53-12-93." O.C.G.A. § 53-12-2(3). "An implied trust is either a resulting trust or a constructive trust." O.C.G.A. § 53-12-90. A "resulting trust is a trust implied for the benefit of the settlor or the settlor's successors in interest when it is determined that the settlor did not intend that the holder of the legal title to the trust property also should have the beneficial interest in the property" when: (1) a trust is created but fails, in whole or in part; (2) a trust is fully performed but all trust property is not exhausted; or (3) a purchase money resulting trust is established. O.C.G.A. § 53-12-91. "A constructive trust is a trust implied whenever the circumstances are such that the

5

person holding legal title to the property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." O.C.G.A. § 53-12-93(a). The Georgia Court of Appeals has noted that a constructive trust may arise when a person who receives property agrees to hold it for the benefit for another, because the use of the property would be unjust enrichment, which is a violation of an equitable principle. *Dodd v. Scott*, 550 S.E.2d 444, 447 (Ga. Ct. App. 2001). Regardless of whether a trust is express or implied, "A settlor shall have no power to modify or revoke a trust in the absence of an express reservation of such power." Ga. Code Ann. § 53-12-150 (2007).

Neither the ALJ nor the Appeals Council determined whether Abioro manifested intent to create an irrevocable trust under Georgia law. *See* POMS SI 01120.200(D)(2) (stating revocability of a trust and the ability to use the trust principal "depends on the terms of the trust agreement and/or on State law"). Because intention is an integral question regarding whether a trust was created under Georgia law, the trier of fact should decide in the first instance, with its first-hand view of credibility, whether Abioro intended to create an irrevocable trust. *See Viehman v. Schweiker*, 679 F.2d 223, 227 (11th Cir. 1982) (citation omitted) (stating "[c]redibility determinations lie solely within the province of the trier of

6

fact"). Thus, we remand to the Commissioner to decide in the first instance whether Abioro intended to create an irrevocable trust under Georgia law.

## II.

Abioro next asserts the notices she received related to the overpayment and termination of her granddaughter's SSI benefits were not legally adequate because (1) the overpayment notice lists the settlement award as income but does not address a specific problem and does not address the termination of SSI benefits; and (2) the notice of termination of SSI benefits did not adequately explain the reason for termination.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 96 S. Ct. 893, 901 (1976). The Supreme Court has recognized that, in appropriate circumstances, a person's interest in federal entitlements may constitute a protected property interest. These entitlements include social security disability benefits. *See id.* "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 902 (quotation and citation omitted). In addition, the Commissioner is required to

7

ensure that individuals receive notice that "is written in simple and clear language." 42 U.S.C. § 1383(o)(1).

Here, the record shows that the notice Abioro received regarding overpayment included a detailed explanation of the overpayment and instructions regarding how to appeal the decision, written in simple and clear language. In addition, the fact that Abioro did seek review of the decision, and eventually exhausted her administrative remedies, further indicates that she received adequate notice of overpayment.

Next, the application Abioro filled out for SSI benefits for her granddaughter plainly told her to report any changes. Such changes would naturally include changes to her granddaughter's income and resources, which she was required to report in her application. Therefore, the record shows that that Abioro had notice that she needed to report the settlement money.

Finally, the notice Abioro received regarding the termination of her granddaughter's SSI benefits informed her that her granddaughter's benefits would be terminated because her income exceeded the threshold amount, rendering her ineligible. Specifically, the notice cited "unearned income of $9,999.99 for January 2000 on," and it further explained the appeals process and provided a toll-free number to call with any question. Therefore, Abioro was on notice that her

granddaughter's benefits were being terminated because of the settlement funds, and that she could appeal the decision. As a result, Abioro did not receive inadequate notice of the overpayment of SSI benefits, the need to report changes in income and resources, and the termination of SSI benefits. Accordingly, we affirm the Commissioner on this issue.

**REMANDED IN PART, AFFIRMED IN PART.**