**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 1, 2017**

# In the Court of Appeals of Georgia

A16A1504. MAXEY v. SAPP et al.

ANDREWS, Judge.

Lori S. Maxey sued her siblings, sister-in-law, and niece, seeking to impose a constructive trust on real property formerly belonging to her mother. Following the close of evidence at trial, the trial court directed a verdict for the defendants. Maxey appeals, asserting that questions of fact remain for resolution by the jury. We agree and reverse.[1]

A trial court properly grants a motion for directed verdict where "there is no conflict in the evidence as to any material issue and the evidence introduced, with all

---

[1] The Supreme Court's "equity jurisdiction is not invoked if the issue raised on appeal involves only whether the evidence is sufficient to authorize the imposition of an implied trust." *Robertson v. Robertson*, 333 Ga. App. 864, 867, n. 4 (778 SE2d 6) (2015). Maxey, therefore, properly file her appeal in this Court. See id.

reasonable deductions therefrom, . . . demand[s] a particular verdict." *Troutman v. Troutman*, 297 Ga. App. 62 (676 SE2d 787) (2009). We review a directed verdict ruling under the "any evidence" standard, construing the evidence most favorably to the non-moving party. See id.

So viewed, the evidence shows that Dewitt Hugh Sapp, Sr. ("Hugh Sr.") and Gloria June Sapp had five children: Maxey, Dewitt Hugh Jr. ("Buddy"), Larry, Ann, and Karen. In 1975, Hugh Sr. and Gloria executed a joint will providing that if one of them died, the survivor would inherit the other's property. The will further stated: "Upon the death of the survivor of either of us the remainder of our estate, if any, real and personal, is devised and bequeathed to our children, share and share alike, among our five children."

During his lifetime, Hugh Sr. amassed an estate that included ownership of all stock in Sapp's Saw Shop, Inc., a business he began in 1961, and five tracts of real property. Hugh Sr. died in 2001, leaving the business and land to his wife. Gloria subsequently conveyed her interest in the corporation to Larry, although she remained a corporate officer and its registered agent.

In June 2007, a Sapp's Saw Shop employee sued Larry and the corporation, alleging that Larry had invaded her privacy and caused her emotional distress by

2

installing surveillance equipment in an employee bathroom. Gloria, who was seriously ill with cancer and undergoing treatment at the time, was upset by the lawsuit, expressing concern that her property might be lost through the litigation. Shortly after the legal proceedings began, Gloria transferred the five tracts of land that she had inherited from Hugh Sr. to Buddy and his wife, Sharon Sapp. Approximately six months later, on December 12, 2007, Gloria died.

Maxey learned about the property transfer while meeting with her siblings a few days after Gloria's funeral. Buddy told her that Gloria had transferred the land to protect it from the litigation and that once "the lawsuit was over . . . [the property] would be divided up equally" amongst the siblings, as their mother had intended. The siblings then agreed on the property division, identifying parcels for each individual.

Several years later – after the lawsuit had been dismissed – Buddy and Sharon deeded to Karen and Ann the parcels of property that they had selected. Karen then deeded her property to her daughter, Kara. No transfer, however, was made to Maxey, and the 17 acres earmarked for her remained in Buddy's name. According to Buddy, Maxey was causing "trouble," threatening to hire a lawyer if he did not transfer the property, and he refused to "convey under threats."

Maxey subsequently filed suit, seeking a declaration that Buddy and Sharon held the five tracts in a constructive trust for the benefit of Gloria's children. She also requested that the deeds conveying property to Ann, Karen, and Kara be cancelled so that the land could be distributed properly. The case proceeded to trial, and the defendants moved for a directed verdict after the close of evidence, asserting that Maxey had not proven her constructive trust theory. The trial court agreed, directed a verdict for the defense, and later denied Maxey's motion for new trial. This appeal followed.

"A constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." OCGA § 53-12-132 (a). In other words, equity does not allow "one with a legal interest in a piece of property a windfall recovery when the beneficial interest should flow to another." *Ansley v. Raczka-Long*, 293 Ga. 138, 141 (3) (744 SE2d 55) (2013) (punctuation omitted). Parol evidence regarding the nature of the transaction, the circumstances, and the parties' conduct may be presented to support a constructive trust finding. See *Edwards v. Edwards*, 267 Ga. 780, 781 (2) (482 SE2d 701) (1997). Generally, however, a constructive trust cannot be imposed

4

on real property "based solely on a broken verbal promise to hold or transfer the land for the benefit of another." *Parris v. Leifels*, 280 Ga. 135, 136 (625 SE2d 390) (2006). A broken verbal promise may form the basis for a constructive trust on land only "if it was fraudulently made with the intention of being broken and for the purpose of thereby obtaining title." Id. (punctuation omitted).

In directing a defense verdict, the trial court concluded that Maxey had not established the fraud necessary to impose a constructive trust based on a broken verbal promise. Maxey's allegations, however, did not rest *solely* on evidence that Buddy and Sharon broke a promise to hold the property for the siblings' benefit. She also offered evidence that Gloria had always intended for her children to share in the property and transferred it to Buddy simply to protect it from a legal judgment. And testimony supported the conclusion that the siblings agreed on an appropriate distribution plan after Gloria's death, a plan that Buddy followed with respect to Karen and Ann, but refused to apply to Maxey because he thought she was causing trouble for the family.

These circumstances parallel those confronted by our Supreme Court in *Edwards v. Edwards*, supra. The grandmother in *Edwards* intended to bequeath real property to her three grandsons, but conveyed the land to her daughter to qualify for

5

government assistance benefits. Following the grandmother's death, the daughter deeded parcels of the property to two of the grandsons. The land intended for the third grandson, however, included the house in which the daughter and her husband lived, and the parties had agreed that the third grandson would receive this property only after their death. The daughter eventually died, leaving the property to her husband, who remarried and put the land up for sale, spurring litigation.

The Supreme Court found that material issues of fact remained as to whether the daughter and husband had agreed to hold the property in trust for the third grandson, noting that "[t]o allow the [husband] to sell the property while holding it for [the grandson's] ultimate benefit would result in the [husband's] unjust enrichment." *Edwards*, supra at 782. Although two justices dissented, asserting that the grandson had not shown fraud, id. at 783-784, the majority found the evidence sufficient to sustain a constructive trust theory. See id at 782. The evidence presented in this case – particularly the circumstances of the transfer, Gloria's desire that the property be divided between the siblings, and the distributions to Ann and Karen – similarly supports the theory. See id.

Moreover, even if Maxey's constructive trust allegations were based solely on a broken verbal promise, issues of fact remain regarding fraud and Buddy's intent to

6

perform. According to Buddy, his mother authorized him to cut Maxey out of the distribution. He testified that he had the right "not to give [Maxey] any land if she caused trouble," and he told relatives that she would get nothing if she took him to court. Maxey, however, offered contrary evidence regarding Gloria's intentions, including that she wanted her children to share equally in the property.

This conflicting evidence raises factual questions as to whether Buddy agreed to hold the land in trust for his siblings, but planned to distribute it according to his own wishes, rather than his mother's instructions. The trial court, therefore, erred in directing a verdict for the defendants. See *Hood v. Smoak*, 271 Ga. 86, 88 (516 SE2d 301) (1999) (trial court erred in granting directed verdict on constructive trust claim where evidence authorized jury to conclude that defendant fraudulently induced plaintiff to put property in her name with no intention of honoring their agreement); see also *ASC Constr. Equip. USA v. City Commercial Real Estate*, 303 Ga. App. 309, 315 (3) (693 SE2d 559) (2010) ("Because fraud is inherently subtle, [it] may be proved by slight circumstances, and whether a misrepresentation is fraudulent and intended to deceive is generally a jury question.") (punctuation omitted).

*Judgment reversed. Doyle, C. J., and Ray, J., concur.*