## S98A0401. SWANSON v. SWANSON.
(501 SE2d 491)

HINES, Justice.

This is a dispute between two brothers, James A. Swanson and Teddy Lamar Swanson, over the ownership of the 243-acre family farm located in Catoosa and Walker counties. James brought the action against his brother, asserting that Teddy holds title to an undivided one-half interest in the farm in constructive trust for him. We affirm the superior court's grant of summary judgment to Teddy Swanson because the suit is time-barred both as a matter of law and under the equitable doctrine of laches.[1]

The Swansons' mother conveyed an undivided one-half interest in the property to James in 1967 and then conveyed an undivided one-half interest to the younger Teddy in 1977. On June 25, 1982, James executed a deed conveying his undivided one-half interest in the farm to Teddy,[2] and the deed was recorded that day. During the time of this deed to Teddy, James and his wife Lois (now ex-wife) were experiencing marital problems and had separated. In fact, Lois Swanson filed for divorce three days after the deed to Teddy, on June 28, 1982. James and Lois then reconciled, but their difficulties did not end.

After the 1982 deed, James continued to live on the property, pay some taxes on it, and farm until the land was placed in an agricultural conservation program. Teddy and his family occupied another residence on the farm, as did the Swansons' mother. But James and Teddy too had a difficult relationship, and in May 1985, Teddy's legal counsel wrote James a letter proposing that the brothers equitably divide the farm notwithstanding the fact that Teddy held title to the entire property by virtue of the conveyances from their mother and from James.[3] James would not agree to such a division, and Teddy

---

[1] Teddy moved for summary judgment on the grounds that the action was barred by the statute of limitation, laches, equitable principles, estoppel or equitable estoppel, and the statute of frauds, and that James was barred from seeking a constructive trust because of unclean hands. The trial court did not specify the basis for its decision.

[2] The deed recites that the grantor is also conveying "interest in all farming equipment on the above tracts of land."

[3] The letter provided in relevant part:

"Our law firm is counsel to your younger brother, Teddy Lamar Swanson, and at his behest we have examined the title to the property formerly owned by your parents. . . . Doubtless you are aware that our client presently holds title to the entire tract by virtue of conveyances from [your mother] and subsequently from yourself.

Notwithstanding the fact that our client currently holds title to the entire farm he is nonetheless willing to divide the property with you. We are advised that you have been in possession of the farm and have received rentals and other benefits therefrom for some time without sharing the same with our client.

Our client advises us that a plat exists and that a[n] equitable division of the

did not press the matter out of concern for the negative impact on the health of their mother, who still resided on the property.

The hostility between the brothers continued as did that between James and Lois Swanson. Lois again filed for divorce in June 1994. She named Teddy as a co-defendant in the divorce action, alleging that James had fraudulently conveyed or attempted to convey the farm to Teddy in an attempt to defeat her claims for equitable division of property, child support, and alimony. Teddy denied a fraudulent conveyance and that James had any legal or equitable interest in the farm; he maintained that in 1982 he had paid James $10,000 in cash for the property. The divorce was granted on April 7, 1995, but Lois was unsuccessful in her attempt to have the deed to Teddy set aside or declared to be void.[4]

James and his housemaid continued to live in one of the three separate residences on the property, as did Teddy and his family, and their ailing mother who was in Teddy's care. Tensions between the brothers escalated into a physical altercation in April 1995. Subsequently, Teddy demanded that James vacate the farm, offering him $143,000 to do so. Instead, James filed the present action on May 17, 1996, nearly 14 years after the deed to Teddy and 11 years after James was given written notice of Teddy's claim to the entire parcel.

1. A constructive trust is one that is implied when the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity. OCGA § 53-12-93; *Aetna Life Ins. Co. v. Weekes*, 241 Ga. 169, 172 (244 SE2d 46) (1978). Implied trusts are subject to statutes of limitation, and an action to impose or enforce such a trust regarding real property must generally be brought within seven years from the time the cause of action accrues. *Denson v. Denson*, 214 Ga. 8, 9 (1) (102 SE2d 605) (1958); *Hodges v. Hodges*, 213 Ga. 689, 694 (2) (100 SE2d 888) (1957); *Wallace v. Mize*, 153 Ga. 374, 383 (1) (112 SE 724) (1922).[5] The statute of limitation begins to run against the party asserting title under an implied trust when there has been notice of an adverse claim by the alleged trustee or such change of circumstances as would put a reasonably prudent person on notice that any trust relationship has ceased. *Whitworth v. Whitworth*, 233 Ga. 53, 56 (2) (b)

---

property can be made wherein both you and Teddy can each obtain comparable land, water and frontage. It is our client's sincere hope that this matter can be resolved amicably between the parties and at a minimum expense. . . ."

[4] The court awarded Lois $26,000 for her interest in real estate.

[5] *Garner v. Lankford*, 147 Ga. 235 (93 SE 411) (1917), applied a ten-year statute of limitation for actions against fiduciaries in considering an implied trust; however, the implied trust was not of real property but of monies invested in, inter alia, land. See current OCGA § 9-3-27.

(210 SE2d 9) (1974); *Denson,* supra at 10 (1).

Thus, even if it could be found that Teddy held James' former share of the farm in constructive trust for him following the 1982 deed, any such trust relationship ceased in 1985, when Teddy expressly and unequivocally notified James that he was claiming all of the acreage as his own, and the statute of limitation for this cause of action was triggered. It is true, as James maintains, that neither the statute of limitation nor laches will run against one in peaceable possession of property under a claim of ownership for delay in resorting to a court of equity to establish the person's rights. *Whitworth,* supra at 56 (2) (b); *Richards v. Richards,* 209 Ga. 839, 843 (3) (76 SE2d 492) (1953). Nor will suit be barred by the statute of limitation when the trustee of an implied trust recognizes the trust, and treats it as subsisting within seven years preceding an action to enforce it. *Wallace v. Mize,* supra at 383 (3). However, neither circumstance occurred in this case. The undisputed facts show such continuing hostility over the farm so that it cannot be said that James was in peaceable possession of the property following the adverse claim. Nor does the ongoing conflict permit a finding that Teddy acted as if a trust was subsisting after his express claim of ownership in 1985. At no time did Teddy repudiate his claim to the entire tract, and James' continued residence or use of the land was at Teddy's bare sufferance. The evidence shows without controversy that after 1985, any continued attempt by Teddy to divide the property or in some manner reach agreement with James was in order to separate himself from his brother.

The statute of limitation began to run in 1985, and serves to bar this action brought in 1996.

2. The grant of summary judgment to Teddy can likewise be sustained based on the equitable doctrine of laches. Even though laches operates independently of any statute of limitation, " 'courts of equity usually act in obedience and in analogy to the statutes of [limitation], in cases where it would not be unjust and inequitable to do so.' " *Cooper v. Aycock,* 199 Ga. 658, 666 (1) (34 SE2d 895) (1945).

Whether laches should apply depends on a consideration of the particular circumstances, including the length of the delay in the claimant's assertion of rights, the sufficiency of the excuse for the delay, the loss of evidence on disputed matters, the opportunity for the claimant to have acted sooner, and whether the claimant or the adverse party possessed the property during the delay. These factors are relevant because laches is not merely a question of time, but principally a matter of inequity in permitting the claim to be enforced. *Hall v. Trubey,* 269 Ga. 197 (498 SE2d 258) (1998); *Troup v. Loden,* 266 Ga. 650, 651 (1) (469 SE2d 664) (1996); *Yablon v. Metropolitan Life Ins. Co.,* 200 Ga. 693, 708 (2) (38 SE2d 534) (1946).

But lapse of time is an important element and in itself may be telling on the question of inequity. *Cooper v. Aycock,* supra at 666 (1). James waited to assert a constructive trust until almost 14 years after making the deed to Teddy and 11 years after Teddy put his claim in writing, resulting in turmoil for Teddy for more than a decade, including Teddy's involvement in James' divorce litigation. James would urge that he filed his cause of action just a year after learning of the adverse claim, that is, approximately a year after the physical altercation with Teddy and Teddy's demand that he vacate the farm. But, as has been discussed, James knew of Teddy's claim to the entire tract since 1985, and at no time thereafter did Teddy repudiate his complete legal ownership of the farm. James' failure to make his equitable claims known for so prolonged a time, in the face of the ongoing hostility with Teddy and Teddy's continued efforts to resolve the situation, militate against James on the question of laches.

3. James amended his original complaint to assert that he never intended for the 1982 deed to be delivered and never authorized anyone to deliver the deed on his behalf. But when a deed is executed and duly recorded, as was the case here, there is the presumption that the deed was delivered. *Whitworth,* supra at 54 (1). What is more, the question of delivery as affecting the conveyance of James' interest in 1982 is of no moment in assessing the timeliness of the claim for an equitable trust for it does not alter the fact of James' knowledge of his brother's claim under the deed since 1985.

4. Our analysis renders it unnecessary to address the issue of motive surrounding the making of the 1982 deed, as well as the remaining grounds in support of the summary judgment.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 15, 1998 —
RECONSIDERATION DENIED JULY 31, 1998.

*Clifton M. Patty, Jr.,* for appellant.
*Cunningham & Mullinax, William D. Cunningham,* for appellee.