**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**JULY 1, 2013**

# In the Court of Appeals of Georgia

| | |
|---|---|
| A13A0507. ANDERSON v. JONES et al. | JE-026 |
| A13A0508. NORTON v. ANDERSON. | JE-027 |
| A13A0509. JONES et al. v. ANDERSON. | JE-028 |

ELLINGTON, Presiding Judge.

Ashden Anderson (formerly Norton) filed suit against her father, Scott Norton, and attorney Billy Jones and Jones' law firm, Jones, Osteen and Jones (collectively "Jones"), alleging that Norton and Jones breached fiduciary duties owed to her and that Jones committed legal malpractice. Norton and Jones filed motions for summary judgment, which the trial court granted. Anderson appeals from that ruling. For reasons that follow, we affirm the trial court's grant of summary judgment in Case No. A13A0507.[1]

---

[1] Norton and Jones also filed motions to dismiss, which the trial court denied. Norton and Jones filed cross-appeals from the denial of their motions to dismiss, Case

Viewed favorably to Anderson,[2] the evidence shows that, on December 20, 1995, five-year-old Anderson and her family were involved in a serious motor vehicle accident with a truck driven by an employee of Del Monte Fresh Produce N.A., Inc. ("Del Monte"). Anderson's injuries included a severed left hand, which was reattached, and a fractured skull. Norton sustained a ruptured spleen, broken ribs, a

Nos. A13A0508 and A13A0509, respectively. Because the trial court's grant of summary judgment was correct, as explained in Divisions 1 through 4, infra, the cross-appeals in Case Nos. A13A0508 and A13A0509 are moot. See Division 5, infra.

[2] "[T]o prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law[.]" (Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010); OCGA § 9-11-56 (c). The trial court "must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. at 624 (1) (a). "[O]n appeal from the denial or grant of summary judgment[,] the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citations omitted.) *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006). Further, a grant of summary judgment must be affirmed if it is right for any reason, whether stated or unstated in the trial court's order, so long as the movant raised the issue in the trial court and the nonmovant had a fair opportunity to respond. *City Of Gainesville v. Dodd*, 275 Ga. 834, 839 (573 SE2d 369) (2002); *La Quinta Inns, Inc. v. Leech*, 289 Ga. App. 812, 819 (2) (658 SE2d 637) (2008). "It is the grant itself that is to be reviewed for error, and not the analysis employed." (Citation and punctuation omitted.) *La Quinta Inns, Inc. v. Leech*, 289 Ga. App. at 819 (2).

broken sternum, and a broken foot. Anderson's mother, Lisa Cantey (formerly Norton), sustained broken ribs and a scalp laceration. Anderson's younger brother, Jared Norton, was not injured.

Norton and Cantey retained Jones' law firm to represent the family in their personal injury actions. Under the Retainer Agreements, Jones would be paid 33 1/3 percent of all sums recovered without the filing of a lawsuit, or 40 percent of all sums recovered if suit were filed, plus out-of-pocket expenses. After investigating the case, Jones filed two lawsuits in connection with the accident: one on behalf of Norton and Cantey, as Anderson's parents and natural guardians, for Anderson's injuries and one on behalf of Norton for his own injuries. The parties' attorneys quickly began discussing settlement; an attorney for Del Monte's insurers agreed that the "real issue" was the extent of Anderson's damages.[3] Norton and Jones testified that their primary focus in Anderson's settlement was providing for her long term care by obtaining a life annuity that would provide regular payments totaling more than $6.75 million during her lifetime.

---

[3] Del Monte's applicable insurance policies had combined policy limits of $37 million.

Days before trial was scheduled to begin in Anderson's suit, Jones obtained written authority from Norton and Cantey to settle all of the family's claims as follows: $1.75 million for Anderson's injuries; $2.5 million for Norton's injuries; and $300,000 for Cantey's injuries; for a total of $4.5 million. Jones communicated this demand to Del Monte's insurers as his "rock bottom" to settle all of the family's claims, including those asserted in the two pending lawsuits. Jones testified that he had evaluated each family member's case separately, discussed those values with Norton and Cantey, and then negotiated four separate settlements with Del Monte's insurers. On February 28, 1997, the defendants accepted,[4] and Jones asked for written confirmation. According to Jones, the insurer's attorney said, "I'll send you a letter. If it's okay with you, I'll just put the total in here. I won't outline each case separately[.]" The insurer's attorney's letter referenced "a total payment to [Jones'] clients in the amount of 4.5 million dollars," which Jones testified the attorney reached by adding the four separate figures.

---

[4] The final settlement amounts were as follows: $1.75 million for Anderson's claims; $2.448 million for Norton's claims; $300,000 for Cantey's claims; and $2,000 for Jared Norton's claim; for a total of $4.5 million.

Norton and Cantey petitioned the Superior Court of Liberty County to approve the $1.75 million settlement for Anderson's injuries.[5] They requested that the settlement be disbursed as follows: $750,000 to purchase an annuity with specified provisions; approximately $200,000 to providers for outstanding medical bills; $54,000 to Norton and Cantey for medical expenses they had paid; $577,500 (33 1/3 percent) in attorney fees; and the balance to Norton and Cantey as Anderson's natural guardians to be used with court approval for Anderson's benefit, support, and maintenance. From the annuity, Norton and Cantey would receive specified lump sum payments, as well as monthly payments, for Anderson's support until she turned 18. In addition, Anderson would receive specified lump sum payments from the annuity from age 18 to age 50, as well as monthly payments, for life, beginning at age 23, for a total of at least $6.75 million over her lifetime. After a hearing, the court determined that the facts set out in the petition were true, that the $1.75 million settlement was fair, reasonable, just, and made in good faith, and that the proposed settlement was in Anderson's best interest. Accordingly, the court approved the settlement. Norton and Cantey then petitioned to be, and the Probate Court of Liberty County appointed

[5] See Division 3, infra.

5

them to be, guardians of Anderson's property, specifically the $1.75 million settlement.

On March 31, 1997, Norton and Cantey, for themselves individually and as the parents of Anderson and of Jared Norton, executed a "Release of All Claims" arising from the accident, in favor of Del Monte, its employee, and its insurers, and they acknowledged the receipt of "the gross settlement sum" of $4.5 million. The "Release of All Claims" named Del Monte, its employee, and its two insurers as the entities being released and provided that the payment was in full settlement of the two pending lawsuits. Norton and Cantey also executed a "Settlement Agreement and Release" which specified that the $1.75 million settlement for their claims for Anderson's injuries would be paid as follows: $1 million cash to them as Anderson's parents and guardians of her property, and $750,000 for the annuity as provided in the probate court's approval order. This "Settlement Agreement and Release" also named Del Monte, its employee, and its insurers as the entities being released.

A few months after the settlement, Norton filed for divorce from Cantey; he was awarded custody of Anderson. While the divorce was pending, the probate court appointed Thomas Ratcliffe as a guardian ad litem for Anderson. Ratcliffe petitioned for an accounting of the funds from her settlement. In August 2008, the parties

reached a settlement to close the accounting proceeding, with Norton and Cantey each agreeing to pay Anderson $3,200. The parties, including Anderson, who had turned 18 on April 8, 2008, executed a document entitled "Consent Order Regarding the Obligations of Lisa Cantey, . . . Scott M. Norton and Thomas J. Ratcliffe, Guardian Ad Litem." In that consent order, entered August 5, 2008, Anderson agreed, inter alia, that "Norton and . . . Cantey never knowingly or wrongfully obtained any money from [Anderson's] annuity[.]" In addition, she agreed that Norton's "total monetary obligation" to her was $3,200 and that, upon tender of that amount, all of Norton's financial obligation to her as a result of the accounting proceeding would be fully satisfied.

In April 2012, Anderson filed the instant action, alleging that Norton breached his fiduciary duty as guardian of her interests. In addition, she alleged that Jones breached his fiduciary duty to her and committed legal malpractice in his representation of her. She attached the affidavit of an expert who opined that, once the family's personal injury claims were settled for a lump sum of $4.5 million, Jones had a conflict of interest in representing her, Norton, and Cantey in apportioning the settlement. The trial court granted summary judgment in favor of Norton and Jones.

*Case No. A13A0507*

7

1. Anderson contends that the trial court erred in granting summary judgment on her legal malpractice claim against Jones.

> In a legal malpractice action, the plaintiff must establish three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff. . . . [W]ith respect to the "ordinary care, skill and diligence" element, the law imposes upon persons performing professional services the duty to exercise a reasonable degree of skill and care, as determined by the degree of skill and care ordinarily employed by their respective professions under similar conditions and like surrounding circumstances.

(Citation and punctuation omitted.) *Leibel v. Johnson*, 291 Ga. 180, 181 (728 SE2d 554) (2012).

(a) Anderson's malpractice claim is premised, in part, on her contention that Jones negotiated a $4.5 million global settlement with Del Monte's insurers and then, in concert with Norton, divided the proceeds among the four family members, with Anderson receiving an unfairly small portion, considering her severe and permanent injuries. Anderson contends that Jones had a conflict of interest in representing all four plaintiffs (or potential plaintiffs) in apportioning the settlement, because the

family members were then effectively competing against each other for a share of a finite amount of money.

There is no competent evidence in the record, however, to support Anderson's position that Jones negotiated a lump sum settlement and then allocated the proceeds among the four family members. It is undisputed that Jones negotiated the settlements with attorneys for Del Monte's insurers. Jones is the only person who participated in those negotiations who provided sworn testimony in this case. As noted earlier, he testified that he had evaluated each family member's case separately, discussed those values with Norton and Cantey, and negotiated four separate settlements with Del Monte's insurers.

Although Cantey testified that Jones allowed Norton to take most of the settlement, she lacked personal knowledge of the negotiations between Jones and the opposing attorneys.[6] In addition, evidence from the attorneys for Del Monte's insurers

---

[6] See *Jackson v. Cavalry Portfolio Svcs.*, 314 Ga. App. 175, 176-177 (723 SE2d 475) (2012) ("Hearsay, opinions, and conclusions in affidavits are inadmissible on summary judgment." Where it appears that "any portion of [an] affidavit was not made upon the affiant's personal knowledge, or if it does not affirmatively appear that it was so made, that portion is to be disregarded in considering the affidavit in connection with the motion for summary judgment.") (punctuation and footnote omitted); *Holcomb v. Norfolk Southern R. Co.*, 295 Ga. App. 821, 822 (673 SE2d 268) (2009) ("Rules as to the admissibility of evidence are applicable in summary judgment proceedings, since the statute provides that all affidavits, depositions, etc.

9

appears only in the form of a few letters from them to Jones. Even assuming that statements in those letters may properly be considered in the context of Jones' motion for summary judgment, none of the letters contains any direct statements that the insurers offered a global settlement and that apportionment among the family members was left to Jones and/or Norton. Speculation from a reference in one of those letters to "a total payout to [Jones'] clients in the amount of 4.5 million dollars" meant that the family members' claims were not considered and valued separately cannot stand in opposition to direct, testimony based on personal knowledge.[7] Thus,

'shall set forth such facts as would be admissible in the evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.' OCGA § 9-11-56 (e).") (citation and punctuation omitted); *Kaylor v. Atwell*, 251 Ga. App. 270, 273 (2) (b) (553 SE2d 868) (2001) ("It is well-established that all hearsay evidence, unsupported conclusions, and the like, must be stricken or eliminated from consideration in a motion for summary judgment.") (punctuation and footnote omitted).

[7] *Jackson v. Cavalry Portfolio Services*, 314 Ga. App. at 176-177 (Because the creditor's employee's affidavit showed that the statement regarding the debtor's outstanding balance was hearsay not subject to an exception and not made upon personal knowledge, the trial court erred in considering that statement in ruling on the creditor's motion for summary judgment.); *Kaylor v. Atwell*, 251 Ga. App. at 273 (2) (b) (Because the affidavit of a witness showed that the witness's statement that a supervisor had a conversation with a former employee's prospective employer and gave the employee a negative review was hearsay and was an unsupported conclusion not made upon personal knowledge, the witness's statement lacked probative value and could not rebut the supervisor's sworn statement that he did not have such a conversation or give the former employee a negative review.).

on this record it is undisputed that Jones did *not* negotiate a lump sum settlement and then participate in an apportionment among the family members. Further, we note that $4.5 million was just a fraction of the total available insurance coverage. We conclude that Anderson has not identified any evidence that Jones had a conflict of interest.

Even assuming that Jones breached his fiduciary duty in his manner of settling Anderson's claims, Anderson is unable to recover for legal malpractice because she is unable to show that she was damaged by such breach. There is no evidence that a $1.75 million settlement, including the life annuity, was inadequate[8] or that Anderson would likely have obtained a greater settlement if she and her parents had been represented by separate legal counsel. A legal malpractice claim cannot be based upon speculation and conjecture. See *Szurovy v. Olderman*, 243 Ga. App. 449, 452-453 (530 SE2d 783) (2000).

(b) In addition, Anderson contends that, because parents are legally obligated to pay for their children's medical treatment, Jones breached his professional duty to

---

[8] Anderson's expert testified that, based solely on the merits of Anderson's case, it would not be his opinion that $1.75 million was not a fair settlement and that he "would have no basis to say that Mr. Jones committed a legal malpractice in obtaining that settlement," considering Anderson's case alone.

11

her by not structuring the settlement so that her medical expenses were paid out of Norton's settlement instead of hers.

As Anderson contends, parents are responsible for medical expenses incurred in the treatment of their minor children. *Wilson v. Obstetrics & Gynecology of Atlanta*, 304 Ga. App. 300, 308 (3) (696 SE2d 339) (2010); *In the Interest of Ray*, 248 Ga. App. 45, 48 (3) (545 SE2d 617) (2001); *Southern Guar. Ins. Co. v. Sinclair*, 228 Ga. App. 386, 387 (491 SE2d 843) (1997). "Because parents have this responsibility, the right to recover damages for medical expenses incurred in such treatment is vested exclusively in a minor child's parents." (Citation and punctuation omitted.) *Wilson v. Obstetrics & Gynecology of Atlanta*, 304 Ga. App. at 308 (3).[9] The right to recover damages for pain and suffering, on the other hand, is vested in the child, not in the parents. *In the Interest of Ray*, 248 Ga. App. at 48 (3).[10] It follows that, generally, any

---

[9] See Charles R. Adams, Ga. Law of Torts § 30:1 (2012-2013 ed.); John Bourdeau, 13 Ga. Jur. Personal Injury & Torts § 6:5 (updated June 2013).

[10] Lacking the capacity to sue, an unemancipated minor must be represented by a representative, such as a guardian ad litem or next friend. See OCGA § 9-11-17 (c) ("Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may bring or defend an action on behalf of the infant or incompetent person."); *Jackson v. Sanders*, 199 Ga. 222, 226 (2) (33 SE2d 711) (1945) (The regular form of pleading is for a minor to sue by next friend, but for the next friend to sue as next friend for the minor is the same in substance.); *In the Interest of W. L. H.*, 314 Ga. App. 185,

12

amount recovered for a minor child's medical expenses will be the parents' property; any amount recovered for the child's pain and suffering will be the child's property.

Frequently, as in this case, the parents bring a single action to recover their own damages arising from their child's injuries (e.g., the child's medical expenses) and, as the child's next friends, the child's damages from the same occurrence (e.g., the child's pain and suffering).[11] Thus, the settlement of the action Norton and Cantey brought as Anderson's parents for her injuries properly encompassed both Anderson's medical expenses and her pain and suffering.

In addition, there is no expert opinion evidence that Jones breached a professional duty to Anderson by structuring the settlement so that her medical

---

186-187 (723 SE2d 478) (2012) (A minor may only prosecute a civil action by way of a representative, such as a guardian ad litem or next friend. "The purpose of a guardian ad litem or next friend is to furnish a person sui juris to carry on the litigation for the minor's benefit." Thus, although a minor is a party, the guardian ad litem or next friend acts for the minor in the litigation.) (citation, punctuation, and footnote omitted); Charles R. Adams, Ga. Law of Torts § 30:2 (2012-2013 ed.) (When an unemancipated minor brings an action, it must be by a next friend. The action is brought in the name of the minor by his or her next friend.).

[11] See OCGA § 9-11-20 (a) ("All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action.").

expenses were paid out of the $1.75 million settlement. See *Leibel v. Johnson*, 291 Ga. at 181 (Except in clear and palpable cases, expert testimony is necessary to establish the parameters of acceptable professional conduct for an attorney and the manner in which the defendant's representation significantly deviated from those standards.). Indeed, Georgia law expressly factors a child's medical expenses when providing for the approval of the settlement of a minor's claim.[12] Again, Anderson has not shown any breach of Jones' duty to her.

Based on the foregoing, we conclude that the trial court properly granted Jones summary judgment on Anderson's legal malpractice claim.

2. Anderson contends that the trial court erred in granting summary judgment on her claim against Jones for breach of fiduciary duty. The record shows that the claim duplicated her legal malpractice claim: the duties arose from the same source (that is, the attorney-client relationship), were allegedly breached by the same conduct, and allegedly caused the same damages. We conclude that Jones is entitled

---

[12] See OCGA § 29-3-3 (a) (2013) (The term "gross settlement" means "the present value of all amounts paid or to be paid in settlement of the claim, including cash, medical expenses, expenses of litigation, attorney's fees, and any amounts paid to purchase an annuity or other similar financial arrangement."); former OCGA § 29-2-16 (k) (1997) ("The term 'net settlement' shall mean the gross settlement less attorneys' fees, expenses of litigation, and medical expenses for the ward which will be paid from the settlement proceeds.").

to summary judgment for the reasons explained in Division 1, supra. *Oehlerich v. Llewellyn*, 285 Ga. App. 738, 740-741 (2) (647 SE2d 399) (2007) (affirming summary judgment as to the plaintiff's claim for breach of fiduciary duty, which called into question the degree of professional skill exercised by the defendant attorney and therefore merely duplicated the plaintiff's unsupported claim for legal malpractice).

3. Anderson contends that her claim that Norton breached his fiduciary duty to her in the manner in which he apportioned the settlement with Del Monte's insurers is not barred on the basis that the superior court approved the settlement. We disagree.

At the time Norton and Cantey agreed to settle Anderson's claims, Georgia law provided for the protection of minors through judicial oversight of settlements under former OCGA § 29-2-16 (1997).[13] *Grange Mut. Cas. Co. v. Kay*, 264 Ga. App. 139,

---

[13] Former OCGA § 29-2-16 (1997) provided, in pertinent part, as follows:
(a) A guardian is authorized to compromise all contested or doubtful claims for or against the ward he represents and may submit such matters to arbitration. A debtor may be released by the guardian if the release is in the interest of the ward. Furthermore, the guardian may appoint an attorney in fact in the matter, for whose acts the guardian shall be responsible.
(b) If an order of approval is obtained from the judge of the probate court based upon the best interest of the ward, the guardian is authorized

15

to compromise any contested or doubtful claim in favor of the ward he represents without receiving the consideration for such compromise as a lump sum. Without limiting the foregoing, such compromise may be in exchange for an arrangement which defers receipt of part or all of the consideration for the compromise until after the ward reaches majority and may involve a structured settlement or creation of a trust on such terms as the court approves. . . .

(g) If legal action has been initiated through a natural guardian as next friend and a settlement has been proposed under subsection (f) of this Code section and the net settlement amount is $10,000.00 or greater, or where the trial judge otherwise requires a legally qualified guardian, the natural guardian shall apply to become the legally qualified guardian and shall file with the judge of the probate court an initial bond payable to the probate court in an amount set by the trial judge prior to compromising or terminating such claim or receiving any sums paid pursuant to a compromise or judgment. . . .

(i) If legal action has been instituted and the guardian and the defendant in such action have agreed upon a settlement, the settlement must be approved by the judge of the court before whom the action is pending. The guardian shall not be permitted to dismiss the action and present the settlement to the probate court for approval without the approval of the trial judge before whom the action is pending.

(j) Any settlement entered consistent with the provisions of this Code section shall be final and binding upon all parties, including the minor child.

(k) The term "net settlement" shall mean the gross settlement less attorneys' fees, expenses of litigation, and medical expenses for the ward which will be paid from the settlement proceeds. For purposes of determining whether a settlement must be submitted to a court for approval, the "gross settlement" shall include the present value of amounts received after majority, but for purposes of whether a guardian of the property is necessary, "gross settlement" and "net settlement" shall not include amounts to be received after majority. In determining the present value for purposes of this Code section, the present value of any payments to be received in the future by or on behalf of the minor

16

142 (1) (589 SE2d 711) (2003); *Bacon v. Smith*, 222 Ga. App. 542, 544 (3) (474 SE2d 728) (1996). The statute provided that "[a]ny settlement entered consistent with the provisions of this Code section shall be final and binding upon all parties, *including the minor child*." (Emphasis supplied.) Former OCGA § 29-2-16 (j) (1997). Under the plain language of this statute, the settlement agreement is binding on Anderson as against any party to the agreement, including Norton.[14] See *Zepp v. Toporek*, 211

shall be deemed to be the cost paid by or on behalf of the alleged tortfeasor to purchase any annuity or other financial arrangement; and if the alleged tortfeasor or his or her insurer undertakes to make such future payments without purchasing an annuity or other financial arrangement, the present value shall be deemed to be the value in current dollars as calculated in good faith by the alleged tortfeasor or his or her insurer.

See Ga. L. 1995, p. 1171, § 2 (adding subsections (c) through (k), effective July 1, 1995); Ga. L. 2004, p. 161, § 1 (repealing former OCGA § 29-2-16).

[14] *City of Atlanta v. City of College Park*, 292 Ga. 741 (_ SE2d _) (2013) (Under the fundamental rules of statutory construction, an appellate court is required "to construe [a] statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature.") (citation and punctuation omitted); *Judicial Council of Ga. v. Brown & Gallo*, 288 Ga. 294, 297 (702 SE2d 894) (2010) ("[T]he 'golden rule' of statutory construction requires [courts] to follow the literal language of [a] statute unless it produces contradiction, absurdity, or such an inconvenience as to insure that the legislature meant something else.") (citation and punctuation omitted); *Carolina Tobacco Co. v. Baker*, 295 Ga. App. 115, 119 (1) (670 SE2d 811) (2008) (When a statute is "plain and susceptible of but one natural and reasonable construction," a court must simply follow the literal language of the statute, unless doing so would "lead[ ] to absurd or wholly

17

Ga. App. 169 (438 SE2d 636) (1993). Consequently, the trial court did not err in granting Norton's motion for summary judgment on Anderson's claim that Norton breached his fiduciary duty to her in settling her claims.

Anderson argues that our decision in *Zepp v. Toporek* authorizes a claim for breach of fiduciary duty against her father, despite former OCGA § 29-2-16 (j). In that case, however, we held that an attorney could not assert the court-approved settlement of the minor plaintiff's claim as a bar to the plaintiff's malpractice claim because the attorney was not a party to the judgment approving the settlement, and because the judgment did not approve a settlement between the plaintiff and the attorney. 211 Ga. App. at 171-172 (1) (d). In this case, however, Norton was a party to the superior court's judgment, and *Zepp v. Toporek* does not require a different result.

4. Anderson contends that, even though the petition to compel Norton and Cantey to account for funds from her $1.75 settlement was resolved when the superior court approved the consent order, the doctrine of collateral estoppel does not bar her claim that Norton breached his fiduciary duty to her in the manner in which he applied those funds.

---

impracticable consequences [.]") (punctuation and footnote omitted).

18

In Georgia, the collateral estoppel doctrine precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies. Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions. However, unlike res judicata, collateral estoppel does not require identity of the claim – so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim.

(Citations and punctuation omitted.) *Shields v. BellSouth Advertising & Publishing Corp.*, 273 Ga. 774, 777 (II) (545 SE2d 898) (2001).

The final adjudication of the petition for an accounting bars Anderson's claim against Norton. As noted above, Anderson, as an adult, consented to an order that settled the accounting proceeding and the claim that Norton improperly applied her settlement funds. Based upon the identity of parties and issues, collateral estoppel bars Anderson from relitigating this issue in the guise of a breach of fiduciary duty claim. Id. at 771-778 (II); *Playnation Play Systems v. Hammer*, 277 Ga. App. 675, 676-677 (627 SE2d 415) (2006).

5. Because the trial court did not err in granting the motions for summary judgment filed by Norton and Jones, their cross-appeals, Case Numbers A13A0508 and A13A0509, are dismissed as moot.

19

*Judgment in Case No. A13A0507 affirmed; appeals in Case Nos. A13A0508 and A13A0509 dismissed as moot. Phipps, C. J., and Branch, J., concur.*