**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 23, 2015**

# In the Court of Appeals of Georgia

A15A0892. ROBERTSON v. ROBERTSON.

DILLARD, Judge.

Elizabeth Louise Robertson and her mother, Dorothy Keene, appeal the grant of partial summary judgment to Elizabeth's ex-husband, Robert Robertson, in their action to set aside or modify the Robertsons' divorce decree, for enforcement of an implied trust, and for conversion of property. On appeal, Elizabeth and Dorothy argue that the trial court erred in (1) finding that their request to set aside or modify the divorce decree was barred by a three-year statute of limitation; (2) rejecting their request for equitable relief, which was based on the existence of an implied trust, and finding that it was barred by a seven-year statute of limitation; and (3) finding that Elizabeth's claims were barred because she had unclean hands. For the reasons set forth *infra*, we affirm in part and reverse in part.

Viewed in the light most favorable to Elizabeth and Dorothy (*i.e.*, the nonmoving parties),[1] the record shows that the Robertsons were married on September 2, 1969. At some point during the 1990s, the couple purchased property that is the subject of this dispute, and the deed was in both of their names. Initially, the property was undeveloped, but the Robertsons eventually built their home there. In 2002, the Robertsons executed a warranty deed, conveying the property in fee simple to their only child, Melanie Collins. Elizabeth, who had a serious medical condition that often required hospitalization, testified that they conveyed the property to Collins because she was unable to obtain health insurance and Robert had retired. Specifically, Elizabeth was concerned that if she incurred substantial medical debt due to hospitalizations, a hospital or other medical creditor might obtain a judgment against the property. At the time of the conveyance, the Robertsons had a "verbal agreement" with Collins that they could continue to live on the property for the rest of their lives.

In May 2008, Elizabeth filed a verified complaint for divorce against Robert, asserting, *inter alia*, that she and Robert did not jointly own any real estate. On July

---

[1] *See, e.g., Garden City v. Herrera*, 329 Ga. App. 756, 757 (766 SE2d 150) (2014).

8, 2008, the superior court issued a final judgment and decree, granting the divorce. During the divorce proceeding, Elizabeth swore under oath that she and Robert were separated and that their marriage was "irretrievably broken." But, in fact, the couple never separated, discontinued marital relations, or divided any of their assets.[2] Around that time, the Robertsons learned that Collins had mortgaged ten acres of the property to facilitate the purchase of a car, and they demanded that she convey the property back to them. Subsequently, on August 26, 2008, Collins executed a warranty deed, conveying the property in fee simple solely to Robert in exchange for "ten dollars and other valuable consideration."

In July 2009, Robert approached Dorothy, Elizabeth's mother, and convinced her to sell her home and move in with them. Robert told Dorothy that he would treat her as if she were his own mother and that she could reside at the property until her death. Thereafter, in December 2009, Dorothy moved in with the Robertsons, where she had a separate living quarters in the upstairs area of the house. Initially, Dorothy paid $450 per month to Robert for rent and utilities, and later, the monthly payments increased to $600.

---

[2] Robert testified that, after the 2008 divorce, he continued living with Elizabeth, they did not divide any personal property, and they shared a joint bank account until sometime in 2012.

At some point, while still living with Elizabeth, Robert became romantically involved with another woman, who he eventually married in August 2013. In February 2013, approximately six months before Robert remarried, he sent a letter to Elizabeth and Dorothy, notifying them that they must vacate the property within 60 days. But instead of vacating the property, Elizabeth and Dorothy filed a complaint against Robert, requesting that the trial court set aside the 2008 divorce decree because the Robertsons never actually separated and continued to live as husband and wife. They further contended that, in the alternative, the divorce decree should be modified to provide for disposition of the property, which they claimed had been held in trust for their benefit. Elizabeth and Dorothy also alleged that Robert acted willfully and fraudulently in converting their property to his own use and benefit. Finally, Elizabeth and Dorothy contended that they were each entitled to damages for Robert's conversion of the property. Later on, when Elizabeth and Dorothy failed to vacate the property, Robert filed a dispossessory action against them.

Robert answered Elizabeth and Dorothy's complaint against him, asserting several defenses. Discovery then ensued, and on August 14, 2013, Robert filed a motion for partial summary judgment as to Elizabeth and Dorothy's request to modify or set aside the divorce decree, arguing that they had no legal or equitable interest in

the property. Robert further argued that Elizabeth and Dorothy's action to set aside or modify the divorce decree was barred by a three-year statute of limitation. Likewise, he argued that their request for the enforcement of an implied trust was barred by a seven-year statute of limitation. After Elizabeth and Dorothy responded, Robert amended his motion to assert that Elizabeth is precluded from claiming a legal or equitable interest in the property because she has "unclean hands." Specifically, he contended that Elizabeth conveyed the property to Collins in an attempt to defraud her potential medical creditors. Ultimately, in a summary order, the trial court granted Robert's motion for partial summary judgment.[3] The court also granted Elizabeth and Dorothy's petition for a certificate of immediate review, and we granted their application for an interlocutory appeal. This appeal follows.[4]

_____

[3] Although the court's order does not specify, it appears that the court granted summary judgment as to the entirety of Elizabeth and Dorothy's complaint, except for their conversion claim.

[4] Elizabeth and Dorothy initially appealed to the Supreme Court of Georgia, seeking to invoke that Court's jurisdiction over divorce and equity cases. But the Supreme Court transferred the appeal to this Court, concluding that Elizabeth and Dorothy's action essentially sought to set aside Collins's transfer of the property to Robert alone, and thus, the case did not invoke its jurisdiction over divorce and alimony cases. *See e.g., Dunlap v. Pope*, 177 Ga. App. 539 (339 SE2d 662) (1986) (retaining and deciding an appeal from a post-divorce civil action seeking damages for fraud and to recover possession of property awarded to plaintiff in divorce decree, but allegedly retained by the defendant). The Court further noted that its equity

5

At the outset, we note that summary judgment is appropriate when the moving party can show that "there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."[5] And a movant meets this burden when "the court is shown that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case."[6] Finally, if the moving party satisfies this burden, "the nonmoving party cannot rest on its pleadings, but must point to specific evidence giving rise to a triable issue."[7] With these guiding principles in mind, we turn now to Elizabeth and Dorothy's specific claims of error.

---

jurisdiction is not invoked if the issue raised on appeal involves only whether the evidence is sufficient to authorize the imposition of an implied trust. *See Reeves v. Newman*, 287 Ga. 317, 319 (695 SE2d 626) (2010) (noting that the mere imposition of an implied trust as an equitable remedy does not automatically trigger the Supreme Court of Georgia's jurisdiction).

[5] *Garden City*, 329 Ga. App. at 758 (punctuation omitted).

[6] *Id.* (punctuation omitted).

[7] *Id.* (punctuation omitted).

1. Elizabeth and Dorothy first argue that the trial court erred in finding that their action to set aside or modify the 2008 divorce decree was barred by a three-year statute of limitation.[8] We disagree.

OCGA § 9-11-60 (f) provides, in relevant part, that "all motions to set aside judgments [except motions asserting lack of personal or subject matter jurisdiction, and motions for a new trial] shall be brought within three years from entry of the judgment complained of." And here, Elizabeth and Dorothy's complaint to set aside or modify the 2008 divorce decree was filed on April 10, 2013, well over three years after the decree was entered. Thus, the trial court did not err to the extent that it found that the request to set aside or modify the divorce decree was time-barred.[9]

---

[8] As previously noted, the trial court entered a summary order, which did not include specific findings of fact or conclusions of law. Nevertheless, a grant of summary judgment must be affirmed if "it is right for any reason, whether stated or unstated in the trial court's order, so long as the movant raised the issue in the trial court and the nonmovant had a fair opportunity to respond." *Anderson v. Jones*, 323 Ga. App. 311, 312 n.2 (745 SE2d 787) (2013).

[9] *See Mehdikarimi v. Emaddazfuli*, 268 Ga. 428, 429-30 (2) (490 SE2d 368) (1997) (holding that wife's action to set aside a portion of the divorce decree that obligated her to pay child support was barred by the three-year statute of limitation set forth in OCGA § 9-60-11 (f)); *Black v. Donehoo*, 229 Ga. 712, 713 (194 SE2d 90) (1972) (holding that, when a judgment in a divorce proceeding was not void because of lack of personal or subject-matter jurisdiction, a motion to set aside portions of that judgment must be brought within three years).

7

Nevertheless, Elizabeth and Dorothy argue that the divorce decree and the incorporated settlement agreement were the product of fraud, and the statute of limitation for fraud does not begin to run until the parties discover the fraud. And according to Elizabeth and Dorothy, they did not become aware of Robert's "plan to defraud them of their interest in the property" until immediately before they filed this action. To be sure, Elizabeth and Dorothy are correct that under OCGA § 9-3-96,"[i]f the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." And to toll the limitation period under this statute, a plaintiff must show that: (1) a defendant committed actual fraud;[10] (2) the fraud concealed the cause of action from the plaintiff; and (3) the plaintiff exercised reasonable diligence to discover the cause of action despite her failure to do so within the statute of limitation.[11] Finally, a

---

[10] *See Lehman v. Keller*, 297 Ga. App. 371, 372-73 (1) (677 SE2d 415) (2009) ("The tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." (punctuation omitted)).

[11] *Daniel v. Amicalola Elec. Membership Corp.*, 289 Ga. 437, 445 (5) (b) (711 SE2d 709) (2011); *accord Moore v. Mack*, 266 Ga. App. 847, 849 (1) (b) (598 SE2d 525) (2004).

plaintiff bringing an action for fraud "has the burden of showing the existence of facts that would toll the statute of limitation."[12]

But here, Elizabeth and Dorothy have not presented evidence that Robert committed any act of fraud concealing their action to set aside or modify the divorce decree. Nevertheless, they argue that there is a genuine issue of material fact regarding whether the Robertsons actually intended to divorce because, after the divorce, Elizabeth and Robert continued living as if they were married. But at the time of the divorce, Elizabeth was well aware that she and Robert had no intention of separating, discontinuing marital relations, or dividing assets. Indeed, Elizabeth and Dorothy admit that "[t]he divorce was to keep the parties from financial ruin if [Elizabeth] Robertson . . . incurred astronomical medical bills and to allow her more benefits financially." Moreover, Elizabeth falsely represented to the divorce court that she and Robert were separated and that their marriage was "irretrievably broken" when she knew at the time that the divorce was a sham. Thus, although Elizabeth and Dorothy now claim that the divorce decree should be set aside because it was

---

[12] *Falanga v. Kirschner & Venker, P.C.*, 286 Ga. App. 92, 94 (1) (a) (648 SE2d 690) (2007).

fraudulent, Elizabeth was well aware of the alleged fraud in 2008, more than three years before she filed the instant complaint.[13]

Elizabeth and Dorothy further contend that their action is not barred by the three-year statute of limitation because the Robertsons' divorce settlement agreement did not provide for the disposition of the property. They also contend that the settlement agreement itself was fraudulent because Elizabeth was unaware of Robert's intent to have their daughter deed the property back only to him. But Elizabeth knew at the time of the divorce that the property had been conveyed to her daughter, via warranty deed, four years earlier, and that she and Robert no longer had a legal interest in the property. Indeed, in her verified complaint for divorce, Elizabeth represented to the court that "[t]he parties *do not jointly own any real estate*." And it is well established that a party may "make admissions in judicio in

---

[13] *See Hamburger v. PFM Capital Mgmt., Inc.*, 286 Ga. App. 382, 389 (4) (649 SE2d 779) (2007) (holding that the statute of limitation was not tolled based on fraudulent concealment when the plaintiff was *aware* of the facts giving rise to her complaint); *see also N4D, LLC v. Passmore*, 329 Ga. App. 565, 567 (1) (765 SE2d 717) (2014) (holding that statute of limitation for a breach-of-contract action was not tolled when the plaintiff "was aware" of the alleged breach within the one-year limitation period); *Allmond v. Young*, 314 Ga. App. 230, 231 (1) (723 SE2d 691) (2012) (noting that "mere silence or a failure to disclose . . . will not toll the statute of limitation for fraud where the information was open and available" (punctuation omitted)).

their pleadings, motions, and briefs,"[14] and "[w]hat a party admits to be true in its pleadings may not subsequently be denied."[15] Because Elizabeth admittedly owned no joint real estate with Robert at the time of the divorce, the divorce decree and settlement agreement were not invalid because they failed to provide for the disposition of the property. Thus, Robert's subsequent actions with respect to the property did not "fraudulently conceal" Elizabeth and Dorothy's cause of action to set aside or modify the divorce decree on that basis.

In sum, to constitute concealment of a cause of action so as to prevent the running of the limitation period, "some trick or artifice must be employed to prevent inquiry or elude investigation, or to mislead and hinder the party who has the cause of action from obtaining information, and the acts relied on must be of an affirmative character and fraudulent.[16] And here, Elizabeth and Dorothy simply have not

[14] *Am. Arbitration Ass'n v. Bowen*, 322 Ga. App. 51, 54 (1) (743 SE2d 612) (2013) (punctuation omitted); *accord Builder Marts of Am., Inc. v. Gilbert*, 257 Ga. App. 763, 766 (3) (572 SE2d 88) (2002).

[15] *Bowen*, 322 Ga. App. at 54 (1); *see Builder Marts of Am., Inc.*, 257 Ga. App. at 766 (3) (explaining that, when an admission is made in judicio, "it is then binding on the party and estops the party from denying the admission").

[16] *Mayfield v. Heiman*, 317 Ga. App. 322, 327 (2) (730 SE2d 685) (2012) (punctuation omitted); *accord McElmurray v. Augusta Richmond County*, 274 Ga. App. 605, 615 (4) (a) (618 SE2d 59) (2005).

identified any affirmative fraudulent conduct on the part of Robert that concealed their action to set aside or modify the 2008 divorce decree or the incorporated settlement agreement. Thus, while Elizabeth and Dorothy assert that Robert's silence regarding his intent to acquire the property after the divorce somehow concealed their cause of action, mere silence is insufficient to show fraudulent concealment.[17]

2. Next, Elizabeth and Dorothy argue that the trial court erred in denying their claims for equitable relief because an implied trust resulted from the Robertsons' 2002 conveyance of the property to Collins and her subsequent conveyance to Robert in 2008. They further argue that the court erred by applying a "mechanical" seven-year statute of limitation. We agree that, as to Elizabeth only, there is a genuine issue of material fact regarding whether she is entitled to enforcement of an implied trust against Robert and that her action is not barred by the applicable statute of limitation.

---

[17] *See Allmond*, 314 Ga. App. at 231 (1) (holding that statutes of limitation for breach-of-contract and fraud claims regarding the sale of property were not tolled when the plaintiffs raised no argument that the defendant "took *any specific action* to prevent them from discovering the sales to another party, especially in light of the fact that the records of the sales were readily and publicly available" (emphasis supplied)); *Fed. Ins. Co. v. Westside Supply Co.*, 264 Ga. App. 240, 243-44 (2) (590 SE2d 224) (2003) ("Concealment of the cause of action must be by positive affirmative act and not by mere silence." (punctuation omitted)); *Feinour v. Ricker Co.*, 255 Ga. App. 651, 655 (2) (566 SE2d 396) (2002) (same).

As an initial matter, it is undisputed that, at the time of the 2002 and 2008 conveyances, Dorothy had no legal or beneficial interest in the property, and she did not begin living there until 2009. Moreover, Elizabeth and Dorothy do not identify at what time and under what circumstances an implied trust was created for Dorothy's benefit. Instead, evidence shows that Dorothy was merely a tenant of the property because, for the entire time she lived there, she made monthly payments to the owner, Robert, for rent and utilities.[18] Thus, Dorothy, as a tenant, has an adequate remedy at law (*i.e.,*contesting the dispossessory action), and she is not entitled to equitable relief.[19] And to the extent that Elizabeth and Dorothy contend that Dorothy obtained equitable interest in the property when, as conceded by Robert, she invested

---

[18] *See Davis v. De Vaughn*, 7 Ga. App. 324, ___ (66 SE 956) (1910) ("Rent, by its definition, being merely the compensation due from the one party to the other for the use of the premises where the relation of landlord and tenant exists, it will be presumed, until the contrary is shown, . . . that the rent sued for in the present case is simply the compensation which should legally flow from the tenant to the landlord for the use of the premises.").

[19] *See Lee v. Peck*, 228 Ga. 448, 450 (3) (186 SE2d 94) (1971) ("It is fundamental [that] . . . absent special circumstances, such as, insolvency of the landlord, or inadequacy of any legal defense which could be interposed thereto, that equity will not interfere with a dispossessory proceeding to enjoin the same . . . ."); *DeFloreo v. Tarvin*, 193 Ga. 760, 762 (20 SE2d 29) (1942) ("A tenant has an adequate remedy at law by which he may resist or contest a dispossessory-warrant proceeding, and equity will not interfere with such regular process." (citation omitted)).

13

approximately $10,000 to make improvements to her living quarters, we note that a tenant does not obtain equitable interest in property merely by voluntarily spending money to make improvements to the landlord's property.[20] Accordingly, Dorothy is not entitled to equitable relief, and we consider this enumeration of error with respect to Elizabeth only.[21]

Robert contends that Elizabeth's action to enforce an implied trust is barred by the statute of limitation because her complaint was filed more than seven years after the 2002 deed to Collins was executed. In this regard, the Supreme Court of Georgia

---

[20] *See Morris v. Britt*, 275 Ga. App. 293, 295 (1) (620 SE2d 422) (2005) (holding that tenants could not sue landlord under the equitable doctrine of unjust enrichment when they acted with the intention of personally benefitting from repairs and additions to the house and they failed to exercise their option to purchase the property or to reach a separate agreement with the landlord regarding the repairs); *Meco of Atlanta, Inc. v. Super Valu Stores, Inc.*, 215 Ga. App. 146, 148 (1) (449 SE2d 687) (1994) (holding that a landlord was not liable for improvements made to a leased property by a tenant even if the landlord knew that the improvements were being made unless the landlord expressly or impliedly authorized the tenant to make the improvements for the former's benefit).

[21] We acknowledge that, in 2012, Elizabeth also wrote four checks to Robert for $600 and indicated that they were for "rent." But no one testified that anyone other than Dorothy paid rent and the record does not contain checks from Elizabeth and Dorothy for the same months. Thus, it is unclear whether Elizabeth made these four payments on her own behalf or on behalf of her mother. Regardless, unlike Dorothy, Elizabeth jointly purchased the property during her nearly 40-year marriage to Robert and shared finances with him until 2012. Thus, for reasons discussed more fully *infra*, evidence shows that she was not merely a rent-paying tenant.

14

has held that implied trusts are "subject to statutes of limitation, and an action to impose or enforce such a trust regarding real property must generally be brought within seven years from the time the cause of action accrues."[22] And the statute of limitation begins to run against the party asserting title under an implied trust when "there has been notice of an adverse claim by the alleged trustee or such change of circumstances as would put a reasonably prudent person on notice that any trust relationship has ceased."[23]

As noted by Robert, more than seven years elapsed between the 2002 conveyance to Collins and when Elizabeth and Dorothy filed this action in 2013. However, Collins, the purported trustee as of the 2002 conveyance, is not a defendant in this action and no longer has an interest in the property. Regardless, Robert has identified no "adverse claim" by Collins that would have notified Elizabeth that the trust relationship had ceased prior to when Collins executed the 2008 deed. Here, Elizabeth seeks to enforce an implied trust against Robert, who could not have become a trustee of the property until he regained legal interest in the property in

---

[22] *Swanson v. Swanson*, 269 Ga. 674, 675 (1) (501 SE2d 491) (1998); *accord Gaul v. Kennedy*, 246 Ga. 290, 290 (1) (271 SE2d 196) (1980).

[23] *Swanson*, 269 Ga. at 675 (1); *accord Whitworth v. Whitworth*, 233 Ga. 53, 56 (2) (b) (210 SE2d 9) (1974).

15

August 2008. Because Elizabeth filed this action less than seven years after the 2008 conveyance, her action is not barred by the statute of limitation.[24]

Turning to the merits of Elizabeth's claim, the Supreme Court of Georgia has explained that "[a]n implied trust is defined as either a resulting trust or a constructive trust."[25] And under the Revised Georgia Trust Code of 2010, "[a] resulting trust is a trust implied for the benefit of the settlor or the settlor's successors in interest when it is determined that the settlor did not intend that the holder of the legal title to the trust property also should have the beneficial interest in the property. . . ."[26] Such an implied resulting trust can arise under three circumstances: "(1) an express or implied trust is created but fails for any reason; (2) a trust is fully performed without exhausting all the trust property; and (3) a purchase money resulting trust is established."[27] A constructive trust, however, is a trust implied whenever "the

---

[24] *See Swanson*, 269 Ga. at 675 (1); *accord Gaul*, 246 Ga. at 290 (1).

[25] *Ansley v. Raczka-Long*, 293 Ga. 138, 141 (2) (744 SE2d 55) (2013); *see* OCGA § 53-13-2 (5).

[26] OCGA § 53-12-130; *see Ansley*, 293 Ga. at 141 (2).

[27] *Ansley*, 293 Ga. at 141 (2) (punctuation omitted); *see* OCGA § 53-12-131 (a) ("A purchase money resulting trust is a resulting trust implied for the benefit of the person paying consideration for the transfer to another person of legal title to real or personal property.").

16

circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity."[28] Indeed, equity will not allow "one with a legal interest in a piece of property a windfall recovery when the beneficial interest should flow to another."[29] Thus, a constructive trust is "a remedy created by a court in equity to prevent unjust enrichment."[30]

In the case *sub judice*, there is no evidence that, in 2008, the parties intended to create a trust, either express or implied, for the benefit of Elizabeth. Indeed, prior to the execution of the 2008 deed, Collins believed that she held title to her parents' property "subject to their right to live in it for a lifetime." And all parties agreed that the property was deeded to Collins for the sole purpose of protecting the property and Collins's future inheritance from potential creditors. Both Collins and Elizabeth maintain that, in 2008, they intended for full legal title to be transferred jointly to the Robertsons. Collins averred that, when she signed the 2008 deed, she believed that

---

[28] OCGA § 53-12-132 (a); *see Ansley*, 293 Ga. at 141 (3).

[29] *Ansley*, 293 Ga. at 141 (3) (punctuation omitted); *accord Weekes v. Gay*, 243 Ga. 784, 787 (3) (256 SE2d 901) (1979).

[30] *Ansley*, 293 Ga. at 141 (3) (punctuation omitted); *accord St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 138 (2) (508 SE2d 646) (1998).

17

her parents were still married and that she was conveying the property back to them as requested. Robert, on the other hand, testified that Collins conveyed the property solely to him because Elizabeth did not want her name on the deed and she said she "didn't want no more to do with the property." Thus, the trial court did not err to the extent that it found that, as a matter of law, an implied resulting trust did not arise in 2008 because no evidence suggests that any party *intended* for Robert to hold legal title to the land in trust, either express or implied, for Elizabeth's benefit.[31]

Nevertheless, viewing the evidence in a light most favorable to Elizabeth, there is a genuine issue of material fact regarding whether an implied constructive trust arose at the time of the 2008 conveyance from Collins to Robert. According to Elizabeth, she continued living with Robert at the property as "man and wife" until 2012, when he "decided to leave [her] for another woman." She also averred that Robert let her "design the house and improve the property however [she] . . . wanted," and that he repeatedly told her that it was "[her] house" and that "[he] built it for [her]." Furthermore, it was undisputed that Elizabeth contributed jointly with Robert to the $100,000 purchase price for the property, she invested her own inheritance

_____

[31] *See* OCGA § 53-12-130; *Ansley*, 293 Ga. at 141 (2) (holding that a resulting trust was not created when the plaintiff failed to allege disputed issues of material facts showing an intention to create an implied resulting trust in her favor).

18

money to pay off the mortgage that Collins had taken out, and prior to when he left in 2012, Robert conducted himself as though he owned the property jointly with Elizabeth. Finally, Elizabeth testified that she invested approximately $90,000 to make improvements to the property during the time when she lived there "as man and wife" with Robert, and that the market value of the property had increased over that time to $296,000. Under these particular circumstances, a reasonable jury could find that allowing Robert to retain sole ownership of a property worth nearly $300,000 that the Robertsons purchased and invested in together from the 1990s until 2012 would result in an inequitable windfall recovery to him and that a constructive trust may be imposed to prevent such a result.[32]

---

[32] *See Ansley*, 293 Ga. at 141-42 (3) (holding that a defendant was not entitled to summary judgment on the plaintiff's claim for enforcement of a constructive trust, a type of implied trust created to prevent unjust enrichment, when there was evidence that the defendant, who owned legal title to the property, did not pay any money for it either at closing or through monthly payments); *Weekes*, 243 Ga. at 786 (upholding a trial court's enforcement of an implied trust against the estate of a deceased co-tenant in favor of the other co-tenant, who paid the entire purchase amount for one property, one half of the purchase price of a second property, all the tax payments on the second property, and a portion of the insurance premiums for a policy only in the deceased co-tenant's name); *Bullard v. Bullard*, 214 Ga. 122, 123 (1) (103 SE2d 570) (1958) (holding that a husband's action to enforce an implied trust against his wife was sufficient to withstand a general demurrer when he alleged that he had a 50 percent interest in the purchase money and the couple jointly operated a café on the property with the understanding that each would have a one-half interest); *McCollum v. McCollum*, 202 Ga. 406, 409-10 (1) (43 SE2d 663) (1947) ("The principle is well

3. Finally, Elizabeth and Dorothy argue that the trial court erred to the extent that it found that Elizabeth's claims were barred because she had "unclean hands." We agree.

The unclean-hands doctrine, "which bars a complainant in equity from obtaining relief[,] has reference to an inequity which infects the cause of action so that to entertain it would be violative of conscience."[33] Here, Robert seeks to take advantage of the equitable doctrine of unclean hands[34] by asserting that Elizabeth

---

settled by the elementary writers, and numerous adjudicated cases, that when the purchase money is paid by one, and the legal title taken in the name of another the person named in the conveyance is but a trustee of him who paid the consideration."); *Whiten v. Murray*, 267 Ga. App. 417, 420-21 (2) (599 SE2d 346) (2004) (holding that a constructive trust arose in favor of wife when, during the marriage, a third party held legal title to property but the couple made all the mortgage payments and taxes, and the third party sold the property after the couple was divorced and retained the proceeds). *Cf. Troutman v. Troutman*, 297 Ga. App. 62, 65 (1) (676 SE2d 787) (2009) (holding that equity prevented the imposition of a constructive trust on a brother in favor of his siblings when their father deeded a farm to the brother, the brother invested $500,000 into the farm and worked it for 18 years, while his siblings did not work on the farm and paid only a small fraction of the cost to maintain it and pay the debt on it).

[33] *Zaglin v. Atlanta Army Navy Store, Inc.*, 275 Ga. App. 855, 858 (2) (622 SE2d 73) (2005) (punctuation omitted); *see* OCGA § 23-1-10 ("He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action.").

[34] *Holmes v. Henderson*, 274 Ga. 8, 8-9 (1) (549 SE2d 81) (2001) (characterizing "unclean hands" as an equitable doctrine).

20

engaged in wrongdoing when she deeded the property to her daughter for the purpose of defrauding potential creditors in 2002. However, Robert fails to identify any particular creditor that was actually defrauded by the 2002 conveyance. Moreover, as explained above, Elizabeth cannot seek to enforce an implied trust arising from the 2002 conveyance because Collins is not a party to this action, and she no longer has an interest in the property. Regardless, even if the parties had fraudulent intent in making the 2002 conveyance and even if that transaction bore any relation to the potential constructive trust that arose in 2008, Robert concedes that he engaged in the exact same fraudulent conduct that he complains of. And when, as here, both parties are equally at fault, Robert cannot avail himself of the equitable defense of unclean hands.[35]

---

[35] *See* OCGA § 23-1-15 ("When both parties are equally at fault, equity will not interfere but will leave them where it finds them. The rule is otherwise if the fault of one decidedly overbalances that of the other."); *Dobbs v. Dobbs*, 270 Ga. 887, 888 (515 SE2d 384) (1999) (holding that one brother's indebtedness to another did not support an unclean-hands defense when the brother loaning the money did not disclose the amount of the debt until trial); *BEA Sys., Inc. v. WebMethods, Inc.*, 265 Ga. App. 503, 510-11 (2) (595 SE2d 87) (2004) (noting with respect to an unclean-hands defense that the trial court must consider the misconduct of the petitioner as compared to the conduct of the respondent). *Cf. Dixon v. Murphy*, 259 Ga. 643, 644 (2) (385 SE2d 408) (1989) (holding that a mother, who conveyed certain property to her son to defraud her creditors in a bankruptcy proceeding, was barred by the doctrine of unclean hands from seeking equitable relief when her son refused to reconvey the property to her).

For all of the foregoing reasons, we affirm the trial court's grant of summary judgment to Robert as to Elizabeth and Dorothy's action to set aside or modify the Robertsons' divorce decree and as to Dorothy's action to enforce an implied trust. But we reverse the court's grant of summary judgment as to Elizabeth's claim for enforcement of an implied trust.

*Judgment affirmed in part and reversed in part. Ellington, P. J., and McFadden, J., concur.*